FILED

2014 DEC -8 P 3:09

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DATACELL EHF., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14 cv 1658 |
| | ) GBL/TCB |
| VISA INC., VISA EUROPE LTD., and | ) |
| MASTERCARD INCORPORATED, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

For its complaint against defendants VISA Inc., VISA Europe Ltd. and MasterCard Incorporated, plaintiff DataCell ehf. states as follows:

### The Parties and Jurisdiction

1. Plaintiff DataCell ehf. ("DataCell") is a closely-held corporation organized under the laws of and having its principal place of business in the Republic of Iceland.

2. Defendant VISA Inc. ("VISA") is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of California.

3. Defendant VISA Europe Limited ("VISA Europe") is a corporation organized under the laws of England and Wales, having its principal place of business in the United Kingdom of Great Britain and Northern Ireland, and is an affiliate of defendant VISA, Inc.

4. Defendant MasterCard Incorporated ("MasterCard") is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of New York.

5. The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367.

## FACTS

7. DataCell is an Icelandic closely-held corporation, which provides a variety of services to, among others, Sunshine Press Productions, ehf. ("Sunshine Press"). Its services to its customers include server hosting and technical support.

8. Sunshine Press is a not-for-profit media organization, which operates a website known as Wikileaks with a worldwide audience, which includes United States citizens, whose goal is to bring important news and information to the public by providing a means for sources to leak information to journalists.

9. All of Sunshine Press's funding comes from public donations, of which a significant portion is paid via credit cards, specifically credit cards issued as VISA and MasterCard cards.

10. In October 2010, Data Cell and Sunshine Press jointly entered into an arrangement with PBS International A/S of Denmark ("PBS/Teller") pursuant

to which PBS/Teller agreed to provide acquiring services for credit card transactions to DataCell and Sunshine Press through its licensee, Korta, in Iceland. A translated version of the PBS/Teller Contract is attached as Exhibit A.

11. In November 2010, Sunshine Press coordinated with various other media organizations to release United States Department of State diplomatic cables, many of which proved embarrassing to the United States government.

12. The release of those cables angered a great many people in the United States government, including Joseph Lieberman, who was then a United States Senator from the State of Connecticut and the Chairman of the Senate Committee on Homeland Security & Governmental Affairs, and Peter King, was then and remains a member of the United Sates House of Representatives, representing the 2nd District in the State of New York, and the Chairman of the House Committee on Homeland Security.

13. Lieberman publically called for any company or organization providing services to Sunshine Press immediately to cease any business relationship with it.

14. King requested that Sunshine Press be placed on the terrorist organization list and that it be blacklisted from doing any business with American companies.

15. To punish Sunshine Press and try to put it out of business as retribution for disclosure of the State Department cables, Lieberman and King instructed their respective staffs to contact defendant VISA and defendant MasterCard and demand that they block individuals from donating money to Sunshine

Press. The efforts of the staffs of Lieberman and King were coordinated and were successful.

16. On August 25, 2011 MasterCard admitted in a letter from its counsel to the European Commission that Lieberman's and King's staffs contacted it regarding Sunshine Press.

17. On December 7, 2010, defendant VISA Europe, at the direction of defendant VISA, instructed PBS/Teller immediately to suspend the processing of any VISA payments for DataCell, because of its association with Sunshine Press. On December 7, 2010, defendant MasterCard also instructed PBS/Teller to immediately suspend processing any MasterCard payments for the benefit of DataCell.

18. The suspension began the next day, December 8, 2010, after which PBS/Teller never provided acquiring services to DataCell and Sunshine Press again.

19. On June 15, 2011, DataCell opened a merchant processing account with Valitor, an Icelandic company that provides credit card processing services.

20. Valitor is VISA's and MasterCard's licensee in Iceland.

21. On July 8, 2011, Valitor stopped all credit card processing for DataCell, because of its association with Sunshine Press, after being contacted by VISA and MasterCard.

## COUNT I
**(Violation of the Sherman Act, 15 U.S.C. § 1)**

22. Plaintiff incorporates paragraphs 1 through 21 by reference.

23. The defendants successfully conspired with each other, at the insistence of Senator Lieberman and Congressman King, to prevent DataCell from receiving any payments using their credit cards by instructing PBS/Teller and Valitor to cease providing services to Sunshine Press, which they did.

24. In 2010, defendant VISA Europe had 67.8% share of the payment card market while defendant MasterCard had 27.7% share of the payment card market.

26. Teller and Valitor are a part of the downstream market for acquiring services for credit card companies.

27. DataCell is a consumer that utilizes both the credit card market and the market for acquiring services.

28. The defendants did not have a legitimate economic reason to prevent credit card payments to DataCell.

29. The defendants' blockade of credit card payments to DataCell, because of its association with Sunshine Press, injured the media market by suppressing the market place of ideas.

30. As a result of this violation of the Sherman Act, DataCell was damaged.

WHEREFORE, DataCell prays judgment as hereinafter set forth.

### COUNT II
**(Tortious Interference with Business Expectancies and Contract)**

31. Plaintiff incorporates paragraphs 1 through 30 by reference.

32. Sunshine Press received donations via VISA and MasterCard through a chain of contractual relationships that included PBS/Teller. Through its relationship and contract with Sunshine Press, DataCell was entitled to five percent of these donations.

33. The defendants knew of the existence of the relationships that DataCell and Sunshine Press had with PBS/Teller and knew that, if they instructed PBS/Teller to stop processing VISA and MasterCard payments for Sunshine Press, financial donations to Sunshine Press would be effectively stopped.

34. The defendants nevertheless instructed PBS/Teller to stop processing payments for the benefit of Sunshine Press and DataCell, without any legitimate reason to do so.

35. As a result of the interference, DataCell was damaged.

WHEREFORE, DataCell prays judgment as hereinafter set forth.

## COUNT III
### (Violation of Virginia Antitrust Act, Va. Code § 59.1-9.12(b))

36. Plaintiff incorporates paragraphs 1 through 35 by reference.

37. The defendants conspired to shut Sunshine Press out of the media market by instructing PBS/Teller to stop providing acquiring services to Sunshine Press.

38. Consequently, Virginians were unable to use credit cards to pay DataCell and Sunshine Press.

39. As a result of the defendants' conspiracy, DataCell was damaged.

WHEREFORE, DataCell prays judgment as hereinafter set forth.

## COUNT IV
### (Civil Conspiracy)

40. Plaintiff incorporates paragraphs 1 through 39 by reference.

41. The defendants conspired with each other, Lieberman, and King to tortiously interfere with DataCell's economic advantage.

42. As a result of this conspiracy, DataCell was damaged.

WHEREFORE, DataCell requests that this Court (1) enter judgment in an amount to be proven at trial in excess of Five Million ($5,000,000.00), jointly and severally, against VISA, Inc., VISA Europe Ltd., and MasterCard Incorporated, trebled; (2) award DataCell its costs and fees; and (3) grant such further relief as is just and equitable.

Dated:  December 8, 2014

HARVEY & BINNALL, PLLC

*/s/ Philip J. Harvey*
Philip J. Harvey, VSB #37941
Jesse R. Binnall, VSB #79292
Louise T. Gitcheva, VSB #86200
717 King Street, Suite 300
Alexandria, Virginia  22314
(703) 888-1943
(703) 888-1930 – facsimile
pharvey@harveybinnall.com
jbinnall@harveybinnall.com
lgitcheva@harveybinnall.com

*Counsel for Plaintiff DataCell ehf.*