# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | | |
|---|---|---|
| DATACELL EHF., | ) | |
| | ) | |
| | ) | Civil Action No. 1:14CV1658 (GBL/TCB) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VISA INC., VISA EUROPE LTD., and | ) | |
| MASTERCARD INCORPORATED, | ) | |
| | ) | |
| Defendants. | ) | |

_____

# MEMORANDUM OF LAW OF DEFENDANT MASTERCARD INCORPORATED
# IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................................. iii

Preliminary Statement ............................................................................................................. 1

I.    THIS ACTION SHOULD BE DISMISSED BECAUSE THE COURT LACKS
      PERSONAL JURISDICTION OVER MASTERCARD ................................................. 2

      A.    Plaintiff Bears the Burden of Establishing Personal Jurisdiction ...................... 2

      B.    This Court Lacks General Jurisdiction Over MasterCard, Which
            is Not "At Home" in Virginia .............................................................................. 3

      C.    Plaintiff Has Not Pleaded Sufficient Facts to Support the Assertion
            of Specific Jurisdiction Over MasterCard ........................................................... 7

      D.    *Daimler* Overrides Section 12 of the Clayton Act ........................................... 10

      E.    Even Under Section 12 of the Clayton Act, Venue Would Not
            Be Proper In This Court ..................................................................................... 11

II.   THE SHERMAN ACT CLAIM IS LEGALLY DEFICIENT AND
      SHOULD BE DISMISSED ......................................................................................... 12

      A.    The Complaint Does Not Allege Concerted Action ......................................... 13

      B.    The Complaint Does Not Allege an Unreasonable Restraint
            of Trade in a Cognizable Market ....................................................................... 16

      C.    The Complaint Fails to Allege Antitrust Injury or Demonstrate
            that DataCell Has Standing to Sue .................................................................... 19

III.  THE STATE LAW CLAIMS (COUNTS II, III AND IV) SHOULD BE
      DISMISSED ................................................................................................................ 21

      A.    The Substantive Law of Virginia Cannot be Applied to this Case ................... 21

      B.    The Virginia Antitrust Act ................................................................................ 22

      C.    Tortious Interference with Business Expectances and Contract ....................... 22

      D.    The Civil Conspiracy Claim .............................................................................. 23

i

CONCLUSION..................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Almy v. Grisham*,
   273 Va. 68, 639 S.E.2d 182 (2007) ..................................................................................... 23

*America Online, Inc. v. GreatDeals.Net*,
   49 F. Supp. 2d 851 (E.D. Va. 1999) .................................................................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 10

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ............................................................................................................. 19

*AstraZeneca AB v. Mylan Pharm., Inc.*,
   No. CV 14-696-GMS, 2014 WL 5778016 (D. Del. Nov. 5, 2014) ........................................ 7

*Atlantic Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990) ............................................................................................................. 19

*Bartholomew v. Va. Chiropractors Ass'n, Inc.*,
   612 F.2d 812 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other*
   *grounds*, *Ratino v. Med. Serv. of D.C.*, 718 F.2d 1260 (4th Cir. 1983) ............................... 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 10, 13, 14

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
   768 F.3d 499 (6th Cir. 2014) ................................................................................................. 8

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
   334 F.3d 390 (4th Cir. 2003) .................................................................................................. 2

*Central Virginia Aviation, Inc. v. North American Flight Services, Inc.*,
   23 F. Supp. 3d 625, 629 (E.D. Va. 2014) .......................................................................... 8, 10

*Citizens for Fauquier County v. SPR Corp.*,
   37 Va. Cir. 44 (1995) .......................................................................................................... 23

*Combs v. Bakker*,
   886 F.2d 673 (4th Cir. 1989) .................................................................................................. 2

*Consulting Engineers Corp. v. Geometric Ltd.*,
   561 F.3d 273 (4th Cir. 2009) ......................................................................................... 2, 3, 8

iii

*Continental Airlines, Inc. v. United Air Lines, Inc.*,
    120 F. Supp. 2d 556 (E.D. Va. 2000) .................................................................18

*Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*,
    401 F. Supp.2d 415 (E.D. Pa. 2005) ................................................................11

*Cutcher v. Midland Funding, LLC*,
    Civ. Action No. 1:13cv3733-ELH, 2014 WL 2109916 (D. Md. May 19, 2014) ....................6

*Daimler AG v. Bauman*,
    134 S.Ct. 746 (2014) ...................................................................... *passim*

*Daniel v. Am. Bd. Of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) ....................................................................11, 12

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002), *cert denied*, 539 U.S. 953 (2003) ...........................17

*E. Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.*,
    573 F. Supp. 943 (E.D. Va. 1983) .................................................................20

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927)...............................................................................12

*English & Smith v. Metzger*,
    *901 F.2d 36 (4th Cir. 1990)* ......................................................................3

*Estate Construction Co. v. Miller & Smith Holding Co., Inc.*,
    14 F.3d 213 (4th Cir. 1994) .......................................................................15

*Estate of Thompson v. Mission Essential Personnel, LLC*,
    No. 11-0547, 2014 WL 4745947 (M.D.N.C. Sept. 23, 2014) ...................................7

*Farber v. Tennant Truck Lines, Inc.*,
    No. Civ. A. 14-5028, 2015 WL 518254 (E.D. Pa. Feb. 9, 2015) ...............................7

*Frank Brunckhorst Co., LLC v. Coastal Atlantic, Inc.*,
    542 F. Supp.2d 452 (E.D. Va. 2008) ..............................................................23

*Gallop v. Sharp*,
    179 Va. 335, 19 S.E.2d 84 (1942)..................................................................23

*Go-Video, Inc. v. Akai Electric Co., Ltd.*,
    885 F.2d 1406 (9th Cir. 1989) .....................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S.Ct. 2846 (2011) .................................................................... *passim*

*GTE New Media Services Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ...................................................................11

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014)...........................................................................6

*Haley Paint Co. v. E.I. DuPont de Nemours and Co*.,
    775 F. Supp. 2d 790 (D. Md. 2011) .............................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).......................................................................................3

*Hunt v. Calhoun County Bank Inc.*,
    8 F. Supp. 3d 720,725-26 (E.D. Va. 2014) ..................................................3

*In re Auto Refinishing Paint Antitrust Litigation BASF AG and BASF Coatings AG*,
    358 F.3d 288 (3d Cir. 2004)........................................................................11

*In re Polyester Staple Antitrust Litig*.,
    No. MDL 3:03 cv 1516, 2008 WL 906331 (W.D.N.C. April 1, 2008) .................10

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).......................................................................................7

*Kloth v. Microsoft Corp.*,
    444 F.3d 312 (4th Cir. 2006) ......................................................................21

*KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*,
    725 F.3d 718 (7th Cir. 2013) ......................................................................11

*Lesnick v. Hollingsworth & Vose Co*.,
    35 F.3d 939 (4th Cir. 1994), *cert. denied*, 513 U.S. 1151 (1995)...........................10

*Loren Data Corp. v. GXS, Inc.*,
    501 F. App'x 275 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2835 (2013)...........................14, 15

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ......................................................................6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................................14

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ........................................................................6

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).........................................16

*Nichols v. G.D. Searle & Co.*,
    991 F.2d 1195 (4th Cir. 1993) ...........................................................................3

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
    472 U.S. 284 (1985)............................................................................................16

*Novell, Inc. v. Microsoft Corp.*,
    505 F.3d 302 (4th Cir. 2007), *cert. denied*, 552 U.S. 1276 (2008).........................20

*Oksanen v. Page Mem. Hosp.*,
    945 F.2d 696 (4th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992).........................17

*Perkins v. Benguet Consolidated Mining Co.*,
    342 U.S. 437 (1952)..............................................................................................5

*Satellite T Assoc. v. Continental Cablevision of Va., Inc.*,
    586 F. Supp. 973 (E.D. Va. 1982) .......................................................................21

*Satellite Television & Associated Res., Inc. v. Continental Cablevision of Va., Inc.*,
    714 F.2d 351 (4th Cir. 1983), *cert. denied*, 465 U.S. 1027 (1984).....................17, 21

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
    No. 1:14-cv-191, 2014 WL 3500674 (E.D. Va. July 15, 2014)............................15

*Snodgrass v. Berklee Coll. Of Music*,
    559 F.App'x 541 (7th Cir.), *cert. denied*, 135 S.Ct. 451 (2014)..............................7

*Stover v. O'Connell Assocs., Inc.*,
    84 F.3d 132 (4th Cir.), *cert. denied*, 519 U.S. 983 (1996).....................................10

*Taylor v. CNA Corp.*,
    782 F. Supp. 2d 182 (E.D. Va. 2010) ..................................................................22

*Taylor v. CNA Corp.*,
    *supra, 782* F.Supp. .............................................................................................23

*Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*,
    763 F.2d 604 (4th Cir. 1985) ...............................................................................15

*Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.*,
    57 F.3d 1317 (4th Cir. 1995) ...............................................................................19

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001)..................................................................................19

*United States v. Scophony Corp. of America*,
    333 U.S. 795 (1948)..............................................................................................12

*Universal Grading Serv. v. eBay, Inc.*,
  No. 09-2755, 2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ........................................................ 18

*Walden v. Fiore*,
  134 S.Ct. 1115 (2014) ........................................................................................................ 7, 8

*Willis v. Clark*,
  No. 3:05 cv 325, 2005 U.S. Dist. LEXIS 25877 (E.D. Va., Oct. 31, 2005) ............................ 8

*World Traveling Foods, LLC v. Diamond Aircraft Indus., Inc.*,
  No. 11-61670, 2014 WL 4102160 (S.D. Fla. Aug. 18, 2014) .................................................. 7

## STATUTES

28 U.S.C. §§ 1331 and 1367 .................................................................................................. 1

28 U.S.C. § 1391 .................................................................................................................. 11

Section 1 of the Sherman Act, 15 U.S.C. § 1 ......................................................... 13, 14, 15, 17

Section 12 of the Clayton Act, 15 U.S.C. § 22 ........................................................... 10, 11, 12

*Va. Code Ann. § 8.01-328.1* .................................................................................................... 3

## RULES

Fed. R. Civ. P. 4(e)-(f) ............................................................................................................ 3

Fed. R. Civ. P. 12(b)(2) ........................................................................................................ 1, 2

Fed. R. Civ. P. 12(b)(3) .......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 12, 15

## OTHER AUTHORITIES

5B *Wright & Miller, Federal Practice & Procedure* § 1351, at 274-313 (3d ed. 2004, 2012
  Supp.) .................................................................................................................................. 2

**Preliminary Statement**

Defendant MasterCard Incorporated ("MasterCard") submits this Memorandum of Law in support of its Motion, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3) and 12(b)(6), to dismiss this action for want of jurisdiction and for failure to state a claim upon which relief can be granted. This Motion is accompanied by the Declaration of James P. Masterson, dated May 5, 2015 ("Masterson Decl.").

This action involves four parties, none of which has any relevant contact with either the Commonwealth of Virginia or the Eastern District of Virginia.  As alleged in the complaint, plaintiff DataCell, ehf ("DataCell") is a "closely held" Icelandic company that provides "a variety of services," including "hosting and technical support," to various customers, including a putative "not for profit [foreign] media organization" called Sunshine Press Productions, ehf, which operates a website known as "Wikileaks."[1]  (Complaint ¶¶ 1, 7, 8, 10.)  MasterCard is a publicly-held Delaware holding company with a principal place of business in New York.  (*Id.* ¶ 4; Masterson Decl. ¶ 2.)  Visa Inc. is organized under the laws of Delaware and has its principal place of business in California, and Visa Europe Ltd. is an English and Wales company with its principal places of business in the United Kingdom and Northern Ireland.  (Complaint ¶¶ 2-3.)

Plaintiff purports to invoke the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1367.  (Complaint ¶ 6.)  The complaint is silent with regard to the basis, if any, for personal jurisdiction or venue, and none of MasterCard's acts or omissions is alleged to have occurred in Virginia.  Accordingly, the Court lacks both general and specific personal jurisdiction over MasterCard and the complaint should be dismissed on this basis alone.

---

[1] The mission and activities of Wikileaks are discussed at pages 3-5 of Defendant Visa Inc.'s Memorandum in Support of its Motion to Dismiss.

Putting aside these jurisdictional defects, DataCell's federal antitrust claim is patently deficient as a matter of law for failure to properly allege a conspiracy in restraint of trade and for want of antitrust standing and injury.  The pendent state law claims are also legally deficient.

## I.

### THIS ACTION SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER MASTERCARD

#### A.      Plaintiff Bears the Burden of Establishing Personal Jurisdiction

When a defendant raises a jurisdictional defense under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir. 2003) (*citing Mylan Labs, Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir. 1993)); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) ("When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.").

Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2).  *See generally* 5B *Wright & Miller, Federal Practice & Procedure* § 1351, at 274-313 (3d ed. 2004, 2012 Supp.).  Rather, a district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).

Personal jurisdiction can be general or specific.  General (or all-purpose) jurisdiction authorizes a court to assert jurisdiction over a corporation "to hear any and all claims against [it]." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011).  The Fourth

Circuit has long held that "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1200 (4th Cir. 1993). In contrast, specific jurisdiction exists when a court asserts jurisdiction in a suit that "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n.8 (1984); *Goodyear,* 131 S.Ct. at 2849-50.

To establish jurisdiction over a non-resident, the Court must consider first whether jurisdiction is authorized by Virginia law, and then whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Consulting Eng'rs Corp. v. Geometric, Ltd., 561 F.3d 273, 277 (4th Cir. 2009)*; *Fed. R. Civ. P. 4(e)-(f).* As Virginia's general long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, "the statutory inquiry merges with the constitutional inquiry." *English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)*; *Va. Code Ann. § 8.01-328.1.* As a result, the Court need only undertake one inquiry to determine whether the exercise of jurisdiction here comports with the Fourteenth Amendment's due process requirements. *Hunt v. Calhoun County Bank Inc.,* 8 F. Supp. 3d 720,725-26 (E.D. Va. 2014).

**B.    This Court Lacks General Jurisdiction Over
         <u>MasterCard, Which is Not "At Home" in Virginia</u>**

In *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), the Supreme Court held that, absent exceptional circumstances, corporations are "at home," and hence subject to general jurisdiction, only where they are incorporated or maintain their principal places of business. Because MasterCard is incorporated in Delaware and has its principal place of business in New York (Complaint ¶ 4), it is "at home" only in those two states and therefore not subject to general jurisdiction in Virginia.

In *Daimler,* the Supreme Court explained the limited circumstances in which a court, consistent with the Constitutional guarantee of due process, may assert personal jurisdiction over a foreign corporation.  At issue was whether the District Court in California could exercise general jurisdiction over Daimler in respect of alleged activities that took place outside of California (in Argentina), even though neither Daimler's place of incorporation nor its principal place of business was in California.

Plaintiffs argued that Daimler was subject to general jurisdiction in California based on the California contacts of its subsidiary, Mercedes-Benz USA ("MBUSA").  134 S.Ct. at 752. MBUSA is a Delaware corporation with its principal place of business in New Jersey, and is Daimler's exclusive importer and distributor in the United States. Plaintiffs argued that MBUSA's contacts with California were systematic, continuous and substantial enough to permit the California court to exercise general jurisdiction over it.  Plaintiffs alleged that MBUSA had multiple facilities in California and was the largest supplier of luxury automobiles in California. The Supreme Court assumed for purposes of argument that MBUSA's contacts with California were imputable to Daimler, but nevertheless held that those contacts were not sufficient to permit a finding of general jurisdiction.

In so holding, the Supreme Court stated that its recent ruling in *Goodyear* "made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" 134 S.Ct. at 760 (*quoting Goodyear*, 131 S.Ct. at 2853-54).  The Court explained that in all but the most exceptional circumstances, a corporation is "at home" in only the two "paradigm[] … bases for general jurisdiction":  Its state of

incorporation and its principal place of business.  *Id.* at 760-61 & n.19.   Limiting general

jurisdiction to only those forums where the corporation is "at home" allows entities "to structure

their primary conduct with some minimum assurance as to where that conduct will and will not

render them liable to suit," while "afford[ing] plaintiffs recourse to at least one clear and certain

forum in which a corporate defendant may be sued on any and all claims."  *Id.* at 760, 762

(citations and internal quotation marks omitted).

Although the Court in *Daimler* acknowledged that in extreme circumstances a forum

might exercise jurisdiction over a foreign corporation even when that corporation was neither

incorporated nor headquartered in that forum, no such extreme circumstances have been (or could

be) alleged here.  The Court cited *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437

(1952), as an example of such an extreme circumstance in which a corporation's operations in a

forum other than its place of incorporation or principal place of business might nevertheless be

"so substantial and of such a nature as to render the corporation at home in that State."  *Daimler*,

134 S.Ct. at 761 U.S. n.19.  In *Benguet*, the president of Benguet moved to Ohio where he

maintained an office and worked on behalf of the company, kept office files there, engaged in

company-related correspondence there, used two bank accounts there carrying substantial

company funds, among other things.  342 U.S. at 447-48.  Ohio's exercise of general jurisdiction

over Benguet was permissible because, under those circumstances, Ohio was the corporation's

"principal, if temporary, place of business." *Goodyear,* 131 S.Ct. at 2856 (*quoting Keeton v.*

*Hustler Magazine, Inc.,* 465 U.S. 770, 779-80 n.11 (1984)).

But there is no such extreme situation in this case.  MasterCard is a holding company that

is incorporated in Delaware and maintains its principal place of business in New York.

(Masterson Decl. ¶ 2.)  Plaintiff does not allege that MasterCard or any of its subsidiaries are

incorporated or maintain their principal places of business in Virginia.[2]  If, under these

circumstances, MasterCard were found to be subject to general jurisdiction in Virginia, the same

could be said for every other state in this country, which is precisely the result that the Supreme

Court in *Daimler* declared to be constitutionally impermissible.  As the Court stated:

> If Daimler's California activities sufficed to allow adjudication of
> this Argentina-rooted case in California, the same global reach
> would presumably be available in every other State in which
> [Daimler's] sales are sizable. Such exorbitant exercises of all-
> purpose jurisdiction would scarcely permit out-of-state defendants
> "to structure their primary conduct with some minimum assurance
> as to where that conduct will and will not render them liable to
> suit."

*Daimler* 134 S.Ct. at 761-62 (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472

(1985)).

Since the Supreme Court's decisions in *Goodyear* and *Daimler*, courts throughout the

country, including courts within this Circuit, have consistently rejected claims of general

jurisdiction in forums where defendant corporations were neither incorporated nor maintained

their principal places of business. *See, e.g.*, *Cutcher v. Midland Funding, LLC*, Civ. Action No.

1:13cv3733-ELH, 2014 WL 2109916 (D. Md. May 19, 2014).  *See also Monkton Ins. Servs., Ltd.*

*v. Ritter,* 768 F.3d 429, 432 (5th Cir. 2014) (recognizing that after *Goodyear* and *Daimler* "[i]t is

… incredibly difficult to establish general jurisdiction in a forum other than the place of

incorporation or principal place of business");  *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122 (2d

Cir. 2014) (reversing a district court's finding of general jurisdiction where *Daimler* was handed

down after oral argument; the defendant was not an "exceptional case" sufficient to justify the

exercise of general jurisdiction); *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1070 (9th Cir.

---

[2] MasterCard International Incorporated, a wholly-owned subsidiary of MasterCard, is
incorporated in Delaware and maintains its principal place of business in New York.  (Masterson
Decl. ¶ 3.)

2014) *(noting that* Daimler *"makes clear the demanding nature of the standard for general personal jurisdiction over a corporation")*; *Snodgrass v. Berklee Coll. Of Music,* 559 F.App'x 541, 542 (7th Cir.), *cert. denied*, 135 S.Ct. 451 (2014) (applying *Goodyear* and *Daimler*'s "essentially at home" standard in finding general jurisdiction improper); *AstraZeneca AB v. Mylan Pharm., Inc.*, No. CV 14-696-GMS, 2014 WL 5778016, at *2 (D. Del. Nov. 5, 2014); *Estate of Thompson v. Mission Essential Personnel, LLC*, No. 11-0547, 2014 WL 4745947, at *2 (M.D.N.C. Sept. 23, 2014); *World Traveling Foods, LLC v. Diamond Aircraft Indus., Inc.*, No. 11-61670, 2014 WL 4102160, at *4 (S.D. Fla. Aug. 18, 2014); *Farber v. Tennant Truck Lines, Inc.*, No. Civ. A. 14-5028, 2015 WL 518254 (E.D. Pa. Feb. 9, 2015).

The result should be no different here.

### C.   Plaintiff Has Not Pleaded Sufficient Facts to Support the Assertion of Specific Jurisdiction Over MasterCard

The Supreme Court has recently ruled that a non-resident defendant is not subject to specific jurisdiction unless there is a sufficient connection between the defendant, the forum and the claims in the case.  As set forth in *Walden v. Fiore*, 134 S.Ct. 1115 (2014)*,* specific (or "case-linked") jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy'" (*i.e.*, an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation").  *Id.* at 1122 n.6 (*quoting Goodyear*, 131 S.Ct. at 2851)).  The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on the 'relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (*quoting Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)).  Here, plaintiff has not come close to alleging the requisite relationship and the complaint must therefore be dismissed.

In *Walden,* the Supreme Court explained that in cases such as this one, "the defendant's suit-related conduct must create a substantial connection with the forum State," 134 S.Ct. at 1121, and "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (emphasis in original).  The Supreme Court has consistently rejected attempts to sustain specific jurisdiction based solely on contacts between the *plaintiff* and the forum State. *Id.*  Further, as the Sixth Circuit has stated, "the Supreme Court has emphasized that only consequences that *proximately* result from a party's contacts with a forum state will give rise to jurisdiction."  *Beydoun v. Wataniya Restaurants Holding, Q.S.C.,* 768 F.3d 499, 508 (6th Cir. 2014) (*emphasis in original*) (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).

In analyzing the due process requirements for asserting specific jurisdiction, the Fourth Circuit has set out a three-part test in which the court must consider:  (1) "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State"; (2) "whether the plaintiffs' claims arise out of those activities directed at the State"; and (3) "whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).  Applying these factors to the allegations in the complaint*,* there can be no basis for a finding of specific jurisdiction over MasterCard.  *See Central Virginia Aviation, Inc. v. North American Flight Services, Inc.,* 23 F. Supp. 3d 625, 629 (E.D. Va. 2014) (*citing Jones v. Boto Co.*, *Ltd.*, 498 F. Supp. 2d 822, 826 (E.D. Va. 2007)) (plaintiff failed to allege that injury occurred as a result of an act or omission in Virginia); *Willis v. Clark,* No. 3:05 cv 325, 2005 U.S. Dist. LEXIS 25877 at 7-8 (E.D. Va., Oct. 31, 2005).

Here, the complaint does not allege that MasterCard performed a single act in Virginia, let alone an act that could even remotely be described as "suit-related," as required for a finding of

8

specific jurisdiction.[3]  The only allegations that relate to MasterCard are:  (i) that the staffs of Senator Lieberman and Representative King separately contacted MasterCard and Visa in December 2010 and demanded that they block individuals from donating money to Sunshine Press (Complaint ¶ 15); and (ii) that MasterCard and Visa thereafter instructed PBS/Teller (and later Valitor) to cease processing transactions for DataCell by reason of its association with Sunshine Press.[4]  (*Id*. ¶¶ 17, 18, 23.)

The complaint does not allege that any of the demands were made, or any instructions were given, in Virginia.  There are no allegations that the conversations between MasterCard and the Congressional staffers took place in Virginia; that the alleged instructions from MasterCard to PBS/Teller (or Valitor) were initiated from or occurred in Virginia; or that the purported conspiracy between MasterCard and Visa was entered into in Virginia.  There are no allegations that DataCell or Sunshine Press have any presence, let alone suffered any injury, in Virginia. Indeed, the only allegation in the complaint that even refers to Virginia is plaintiff's assumption that Virginians were somehow prevented from using credit cards to make donations to Sunshine Press. (Complaint ¶ 38.)  But even if this were true, the Supreme Court has made clear that in determining whether the court has specific jurisdiction over a defendant, alleged contacts between the *plaintiff* (or third parties) and the forum are irrelevant.[5]

---

[3] MasterCard does not employ any people in Virginia.  Its operating subsidiary MasterCard International Incorporated employs a few people in Virginia, none of whom had anything to do with the conduct alleged in the Complaint.  (Masterson Decl. ¶¶ 2-3.)

[4] The complaint is inconsistent in that it initially alleges that PBS/Teller was processing payments for DataCell (Complaint ¶ 17), but later suggests that PBS/Teller was providing such services to Sunshine Press (*id*. ¶ 23).  But this and other inconsistencies are immaterial since none of the allegations even purports to establish any proscribed activities occurring in Virginia.

[5] Although the complaint alleges that DataCell and Sunshine Press "jointly" entered an agreement with PBS/Teller (Complaint ¶ 10), the agreement attached as Exhibit A to the complaint does not identify Sunshine Press as a party but rather as an "alternative name."  This ambiguity is

In short, because plaintiff has not alleged, and cannot meet its burden of demonstrating, that MasterCard's contacts with Virginia relating to the claims in this lawsuit are sufficient to confer specific jurisdiction over MasterCard, this action must be dismissed in its entirety.  *See, e.g., Central Virginia Aviation, Inc. v. North American Flight Services, Inc*., *supra.*

### D.   *Daimler* Overrides Section 12 of the Clayton Act

The complaint does not purport to allege jurisdiction pursuant to the Clayton Act,[6] but even if it did, the Clayton Act's provision for nationwide service of process, as set forth in Section 12 of the Clayton Act, 15 U.S.C. § 22, does not override the Constitutional requirement that the defendant's contacts with the forum must meet minimum due process standards before the court may exercise personal jurisdiction.  *See, e.g., Haley Paint Co. v. E.I. DuPont de Nemours and Co*., 775 F. Supp. 2d 790 (D. Md. 2011); *In re Polyester Staple Antitrust Litig*., No. MDL 3:03 cv 1516, 2008 WL 906331, at *8 (W.D.N.C. April 1, 2008).   The Fourth Circuit has stated that due process requires the defendant's contacts with the forum state be tantamount to physical presence there.  *Stover v. O'Connell Assocs., Inc*. 84 F.3d 132, (4th Cir.), *cert. denied*, 519 U.S. 983 (1996); *Lesnick v. Hollingsworth & Vose Co*., 35 F.3d 939 (4th Cir. 1994), *cert. denied*, 513 U.S. 1151 (1995).  And in *Daimler,* the Supreme Court made clear that this means that the forum could exercise general jurisdiction over a corporation only where the corporation is incorporated or maintains its principal place of business.[7]   Accordingly, whether or not Section 12 of the Clayton

---

immaterial, however, because the true nature of the "association" between Sunshine Press and DataCell (*id*. ¶¶ 17, 29) and the contractual relationship, *if any*, between Sunshine Press and PBS/Teller are irrelevant to the issue of whether the Court has personal jurisdiction over MasterCard.

[6] Plaintiff's jurisdictional allegations, such as they are, plainly fail to meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[7] Plaintiff has not alleged that MasterCard -- a New York-based holding company -- "is found" or "transacts business" in Virginia.

Act might be read to allow this Court to exercise jurisdiction based solely on its allowance of nationwide service of process in antitrust actions, this Court could not exercise personal jurisdiction over MasterCard where doing so would violate the Constitutional requirements enunciated by the Supreme Court in *Daimler*.

### E.    Even Under Section 12 of the Clayton Act, Venue Would Not Be Proper In This Court

Even if the Court were to conclude, notwithstanding the holding in *Daimler,* that jurisdiction over MasterCard could somehow be based on Section 12 of the Clayton Act, it nevertheless should dismiss this action because of improper venue.  Although there is a split in the Circuits, the majority view, as enunciated  by the Second Circuit, the D.C. Circuit and the Seventh Circuit, is that if the basis for personal jurisdiction is Section 12 of the Clayton Act, the court must also look to Section 12 to determine whether venue is appropriate.  *See, e.g., KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718 (7th Cir. 2013); *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005); and *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000).[8]  As respects venue, Section 12 provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business …."  15 U.S.C. § 22.  There can be no dispute that MasterCard is not an

---

[8] The Third and Ninth Circuits have held that a court may determine jurisdiction based on Section 12, but venue based on 28 U.S.C. § 1391.  *See Go-Video, Inc. v. Akai Electric Co., Ltd*., 885 F.2d 1406 (9th Cir. 1989), and *In re Auto Refinishing Paint Antitrust Litigation BASF AG and BASF Coatings AG*, 358 F.3d 288 (3d Cir. 2004) (although in *Cumberland Truck Equip. Co. v. Detroit Diesel Corp.,* 401 F. Supp.2d 415, 420-21 (E.D. Pa. 2005), one district court held that *Auto Refinishing* applies exclusively to cases against alien corporations).

inhabitant of this forum and there are no allegations in plaintiff's complaint that even come close to establishing that MasterCard "may be found" in this forum or "transacts business" here.[9]

Once venue is challenged, plaintiff bears the burden of demonstrating facts sufficient to establish proper venue.  *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds*, *Ratino v. Med. Serv. of D.C.*, 718 F.2d 1260 (4th Cir. 1983).  Accordingly, even if one were to conclude -- notwithstanding the Constitutional due process requirements for personal jurisdiction -- that this Court has jurisdiction over MasterCard by virtue of Section 12 of the Clayton Act, plaintiff has plainly failed to establish a basis for venue.

## II.

## THE SHERMAN ACT CLAIM IS LEGALLY DEFICIENT AND SHOULD BE DISMISSED

Apart from the absence of personal jurisdiction over MasterCard, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Count I fails to state a claim under the Sherman Act.[10]

---

[9] Because the Supreme Court has held that the "transacts business" language in section 12 presents a lower bar than the "may be found" test, *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.,* 273 U.S. 359, 374 (1927), venue under Section 12 would require evidence that MasterCard "transacts business" within the forum.  The Second Circuit has summarized the "transacts business" test for Section 12 by reference to the Supreme Court's definition of "transacting business" in *United States v. Scophony Corp. of America,* 333 U.S. 795 (1948): "[t]he determination whether a defendant transact[s] business in a district depend[s] on a realistic assessment of the nature of the defendant's business and of whether its contacts with the venue district [can] fairly be said to evidence the 'practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'" *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 429 (2d Cir. 2005) *(quoting Scophony Corp.*, 333 U.S. at 807).

[10] As discussed below, the dismissal of Sherman Act claim should result in the dismissal of the state law claims, which are either dependent on the Sherman Act claim to provide a necessary element or, in the case of the Virginia Antitrust Act, is interpreted consistently with federal antitrust principles.

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must allege facts that, if proven, would show that the defendants entered into a contract, combination or conspiracy that unreasonably restrained trade.  Conjecture, legal conclusions and antitrust buzzwords will not suffice.  Count I of the Complaint is a bare-bones pleading that alleges that defendants: (i) "successfully conspired with each other, at the insistence of Senator Lieberman and Congressman King, to prevent DataCell from receiving any payments using their credit cards by instructing PBS/Teller and Valitor to cease providing services to Sunshine Press, which they did"; and (ii) thereby "injured the media market by suppressing the market place [*sic*] of ideas." (Compl.  ¶¶ 23 and 29.)  This pleading is woefully inadequate.

### A.   The Complaint Does Not Allege Concerted Action

Plaintiff does not allege that MasterCard ever communicated with Visa concerning DataCell (or Sunshine Press), let alone agreed with Visa to deny DataCell access to the MasterCard and Visa payment networks in connection with donations to Sunshine Press.  Plaintiff does not allege, let alone even attempt to define, a relevant market.  Nor does it present any facts to suggest that (or how) *competition* in any cognizable product or geographic market has been unreasonably restrained.  Moreover, the complaint does not allege any facts that would establish that *DataCell* has standing to sue or has sustained any form of "antitrust injury."

Section 1 of the Sherman Act does not proscribe unilateral conduct.  Nor does it prohibit companies from reaching the same conclusion on a particular issue with which they are simultaneously confronted.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Absent an allegation of direct communication between the supposed co-conspirators or facts sufficient to give rise to a *plausible* inference of collusion based on alleged "parallel" conduct, a claim under Section 1 must be dismissed.

13

In *Twombly*, the Supreme Court underscored the distinction between unilateral and concerted action, emphasizing that when a plaintiff is unable to allege the time, place and manner in which the putative conspiracy was formed (and relies solely upon an allegation of parallel conduct), the pleading should not survive a motion to dismiss. *Id.* at 556-57, 570. And this is particularly true when, as here, the complaint confirms that the alleged conspirators had independent and legitimate business reasons for their actions (*e.g.*, complying with a request by senior government officials that U.S. companies not do business with or otherwise facilitate the activities of an organization that is alleged to have conducted criminal activities that were deemed by those official and others to constitute a threat to national security) and did not need to engage in concerted action to protect its business interests and reputation. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 595 (1986).

The Fourth Circuit, in *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 280-81 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2835 (2013), has made clear the distinction between conspiracy and parallel conduct:

> A reviewing court must "take account of the absence of a plausible motive to enter into the alleged . . . conspiracy." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 595, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[C]ourts should not permit factfinders to infer conspiracies when such inferences are implausible, because the effect of such practices is often to deter procompetitive conduct." *Id.* at 593, 106 S.Ct. 1348 (citing *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 762–64, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)). If the alleged co-conspirators "had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." *Matsushita*, 475 U.S. at 596-97, 106 S.Ct. 1348 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 278–80, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence must tend to exclude the possibility that the alleged co-conspirators acted independently, and the alleged conspiracy must make practical,

14

economic sense. *Matsushita*, 475 U.S. at 597-98, 106 S.Ct. 1348 (citing *Monsanto*, 465 U.S. at 764, 104 S.Ct. 1464).

In dismissing the complaint under Fed. R. Civ. P. 12(b)(6), the court in *Loren* noted that when a plaintiff attempts to allege concerted action by conjecture or inference, it must put forth facts that place the parallel conduct in a "'context that raises a suggestion of a preceding agreement' as 'distinct from identical, independent action.'" *Id.* at 280 (*quoting Twombly*).

In *Estate Construction Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 221 (4th Cir. 1994), the court affirmed the dismissal of a Section 1 conspiracy claim as follows:

> The Pattersons argue that they have sufficiently alleged all the elements of an antitrust claim. We disagree. First, they fail to provide any factual support for their allegations that a conspiracy existed. The complaint here lacks completely any allegations of communications, meetings, or other means through which one might infer the existence of a conspiracy. Nor does it provide any details of the time, place and alleged effect of the conspiracy. The Pattersons' complaint amounts only to bare boned allegations of a conspiracy without any supporting facts (citations and quotations omitted).

*See also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 611 (4th Cir. 1985) (when plaintiff attempts to rely on inferences drawn from circumstantial evidence, "[t]here is . . . a line to be drawn between reasonable inferences and mere speculation," and the district court correctly observed that plaintiff's "conclusion or speculation as to existence of a conspiracy, without more, [was] not sufficient to establish a Section 1 violation").

The decision in *SD3, LLC v. Black & Decker (U.S.), Inc.*, No. 1:14-cv-191, 2014 WL 3500674, at *2 (E.D. Va. July 15, 2014), is particularly instructive in its analysis of antitrust pleading requirements.  There, Judge Hilton held that "parallel conduct," even when "consciously undertaken, needs some setting suggesting the agreement necessary to make out a [Sherman] § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a

15

defendant's commercial efforts stays in neutral territory."  Equating parallel conduct with concerted action is unwarranted and would be particularly ill-advised in the context of a refusal to deal claim, since businesses generally may refuse to deal with customers or prospective customers for reasons sufficient to themselves.  *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464 (1984).

Here, the complaint alleges no facts to suggest that MasterCard:  (i) ever communicated with Visa about DataCell or Sunshine Press; (ii) ever communicated with Visa about any calls received from Congressional staffers about Wikileaks; or (iii) had any discernible need or plausible motive to *collude* with Visa in response to *separate* requests by senior members of Congress that U.S. companies not do business with or provide services to an entity accused of engaging in criminal and "terrorist" activities.  (Complaint ¶¶ 12-15, 23).  While plaintiff disingenuously alleges that the defendants did not have a "legitimate economic reason" to prevent credit card payments to DataCell that were earmarked for Sunshine Press (Complaint ¶ 28), it acknowledges that Sunshine Press is an entity that knowingly obtains and disseminates classified State Department cables and was described by Representative King as a "terrorist" organization. (*Id.* ¶¶ 12-15).  Having received requests from influential members of Congress who chaired the Senate and House Homeland Security Committees, MasterCard had legitimate (if not compelling) business reasons to comply, and no plausible reason to collude.  Simply stated, any inference of collusion based on the allegations in this complaint would be implausible and hence impermissible.

> ### B.   The Complaint Does Not Allege an Unreasonable Restraint of Trade in a Cognizable Market

A concerted refusal to deal of the sort alleged herein does not fall within those categories of activity that are deemed to be *per se* violations of the Sherman Act.  *See Northwest Wholesale*

*Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 298 (1985) ("A plaintiff seeking application of the *per se* rule must present a threshold case that the challenged activity falls into a category likely to have predominantly anticompetitive effects.  The mere allegation of a concerted refusal to deal does not suffice because not all concerted refusals to deal are predominantly anticompetitive.").

When, as here, a plaintiff has not alleged a *per se* violation of Section 1 of the Sherman Act, its claim is analyzed under the rule of reason, where the "the reasonableness of a restraint is evaluated based on its impact on competition as a whole within the relevant market."  *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 708-09 (4th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202, 206 (4th Cir. 2002), *cert denied*, 539 U.S. 953 (2003).  In such circumstances, the plaintiff must allege (i) a cognizable product and geographic market, and (ii) *facts* tending to show that competition in that market was unreasonably restrained by the alleged conspiracy.  *Id.* at 212-13.  Defining the relevant market is essential because "the concept of competition has no meaning outside its own arena . . . ."  *Satellite Television & Associated Res., Inc. v. Continental Cablevision of Va., Inc.*, 714 F.2d 351, 355 (4th Cir. 1983), *cert. denied*, 465 U.S. 1027 (1984).

Putting aside its inability to properly allege concerted action, plaintiff has also failed to allege a cognizable relevant market.  First, the so-called "media market" could be broad enough to encompass, on a global scale, all forms of media that gather and disseminate information, including (presumably) television, radio, internet, digital, social media, books, newspapers and magazines and thus cannot be a cognizable market or a market in which the conspiracy alleged herein could have had any appreciable effect.  Second, the so-called "market place for ideas" is much too vague to constitute a relevant market and appears to be more of a rhetorical, rather than

a legal, concept.  The complaint does not suggest how an alleged restriction affecting a single method of funds transfer (credit card payments) to a single "not-for-profit media organization" whose mission is to obtain leaked information and disseminate it on a website would unreasonably restrain the process of *competition* in any cognizable market, much less an amorphous "media market."[11]

The law in this Circuit is clear:  "[A] motion to dismiss a complaint for failure adequately to plead a relevant antitrust market should be granted only where the alleged market can be deemed patently implausible solely on the basis of the four corners of the complaint."  *Continental Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 568 (E.D. Va. 2000) (quotation and citation omitted).  In a case involving email advertising, this Court dismissed the complaint because the alleged market -- "the internet" -- was held to be too broad and lacked cognizable boundaries:  "With respect to the relevant geographic market in which competition takes place, the Court finds that the Internet cannot be defined with outer boundaries. It is not a place or location; it is infinite."  *America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 858 (E.D. Va. 1999).  Similarly, in *Universal Grading Serv. v. eBay, Inc.*, No. 09-2755, 2012 WL 70644, at *7 (N.D. Cal. Jan. 9, 2012) the court dismissed a conspiracy claim where the plaintiff alleged the relevant market to include "any market which significantly depends on participation within online auctions, including the markets for coin grading and the market for certified coins," noting that there is no basis for this "overbroad and amorphous market definition" and that plaintiff's failure to identify a cognizable market was fatal to its claim.

---

[11] In this regard, the allegations about defendants' purported share of the "payment card market" (Complaint ¶ 24) are wholly irrelevant.  Plaintiff does not assert that it is a participant in, or that the alleged refusals to deal had any effect on, the "payment card market."

Here, the alleged "media market" is even more amorphous and implausible than the "internet" or "online auctions" and is, *a fortiori*, defective.  In addition, the complaint makes no attempt to define "the media market" or the "market place of ideas" and thus bears no "rational relation to the methodology courts prescribe to define a market for antitrust purposes -- analysis of the interchangeability of use or the cross-elasticity of demand."  *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001).  In sum, the complaint fails to suggest how competition in any market has been restrained by reason of the "conspiracy" theorized therein.

### C.     The Complaint Fails to Allege Antitrust Injury or Demonstrate that DataCell Has Standing to Sue

Count I of the complaint alleges that plaintiff was "damaged" as a result of an alleged violation of the Sherman Act -- a violation that allegedly "injured the media market by suppressing the market place of ideas."   DataCell is not a participant in the alleged "media market," but rather a provider of services to Sunshine Press (the alleged target of the conspiracy). The complaint fails to specify how *DataCell* was injured by this violation or describe the nature or extent of *its* damage and is therefore defective on its face.

The antitrust laws are intended to protect competition, not competitors, *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 (1990), and "only injury caused by damage to the competitive process may form the basis of an antitrust claim."  *Thompson Everett, Inc. v. Nat'l Cable Advertising, L.P.,* 57 F.3d 1317, 1325 (4th Cir. 1995).  For this reason, a plaintiff must allege injury to competition in a relevant market and must also set forth facts that would show that any alleged injury to itself is the type of injury that the antitrust laws are intended to redress.

To have antitrust standing, a plaintiff generally must be a participant in the market that was allegedly restrained.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 539 (1983) (dismissing claim by plaintiff who "was neither a consumer

19

nor a competitor in the market in which trade was restrained").  Although the Fourth Circuit has

not adopted a "bright-line consumer-or-competitor rule," *Novell, Inc. v. Microsoft Corp.*, 505

F.3d 302, 312-14 (4th Cir. 2007), *cert. denied*, 552 U.S. 1276 (2008), the plaintiff's relationship

to the alleged market is highly relevant to the analysis because it bears on both the "directness of

the alleged injury" and "existence of more direct victims."  For these reasons, antitrust standing

should rarely be conferred on plaintiffs who are not participants in the impacted market.  *See, e.g.*,

*E. Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.*, 573 F. Supp. 943, 947 (E.D. Va. 1983)

("The lower federal courts consistently have held that antitrust violators do not create causes of

action for all persons tangentially harmed.  We must be extremely cautious in granting a person

who is neither a consumer nor a competitor the right to treble damages as a private attorney

general") (citations omitted).

      DataCell does not allege that it is a competitor or participant in the "media market" in

which Sunshine Press purportedly is engaged.[12]  DataCell is, at most, a service provider to an

entity (Sunshine Press) against which the alleged conspiracy supposedly was directed.  Count I is

silent with regard to the nature and extent of DataCell's "injury" and "damage."

      The only "injury" to DataCell that can be discerned from the complaint would relate to a

"five percent" fee that DataCell allegedly obtained from donations made to Sunshine Press via

credit card transactions.  DataCell does not refer to this fee in its Sherman Act claim (Count I),

but alludes to it only in Count II ("tortious interference").  But assuming, *arguendo*, that the

"damage" alleged in Count I relates to this fee, such "injury" would be indirect and tangential.  It

---

[12] DataCell does not allege that it is a competitor of either defendant or that the purpose or effect
of the conspiracy was to restrain competition in the "payment card market."  *See* Complaint ¶ 37
(purpose of alleged conspiracy was to "shut Sunshine Press out of the media market").

clearly would not be the type of injury that the antitrust laws are designed to redress and would not be sufficient to confer antitrust standing on this plaintiff.

The absence of any connection between DataCell -- a provider of "a variety of services" to Sunshine Press and other customers (Complaint ¶ 7) -- and the alleged "media market" is therefore yet another fatal flaw in plaintiff's pleading.  In determining whether a plaintiff has antitrust standing, the court must consider, among other things, the directness of the alleged injury and the existence of more direct victims.  *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006).  It is clear from the allegations in the complaint that any injury to plaintiff resulting from the alleged conspiracy is not direct and that there is a more direct "victim" (Complaint ¶ 37).

The antitrust laws are not intended to provide a treble-damage remedy to any party that happens to have a relationship with the target of the alleged antitrust violation.  An entity that provides "technical support services" to Wikileaks is not a proper antitrust plaintiff.  DataCell lacks antitrust standing and has alleged no cognizable antitrust injury because it is neither a participant in the "media market" nor otherwise "within the target area, *i.e*, 'the sector of the economy in which the violation threatened a breakdown of competitive conditions.'"  *Satellite T Assoc. v. Continental Cablevision of Va., Inc.*, 586 F. Supp. 973, 978 (E.D. Va. 1982) (*quoting South Carolina Counsel of Milk Producers, Inc. v. Newton*, 360 F.2d 414, 418 (4th Cir. 1966)), *aff'd*, 714 F.2d 351 (4th Cir. 1983), *cert. denied*, 465 U.S. 1027 (1984).

### III

### THE STATE LAW CLAIMS (COUNTS II, III AND IV) SHOULD BE DISMISSED

#### A.     The Substantive Law of Virginia Cannot be Applied to this Case

In order not to burden the Court with repetitive submissions, MasterCard adopts and incorporates by reference the arguments set forth by Visa Inc. in Section IV(A) of its

Memorandum with regard to plaintiff's claims under Virginia state law.  Apart from the bald allegation that Virginians were "unable to use credit cards to pay DataCell and Sunshine Press," there is absolutely no nexus between the Commonwealth of Virginia, the parties and the claims asserted by plaintiff herein.  None of the parties is located in or has any significant contact with Virginia, and none of the claims arise from any contact occurring in Virginia.  And, in all events, the state law claims, like plaintiff's Sherman Act claim, are legally deficient.

### B.    The Virginia Antitrust Act

MasterCard similarly adopts and incorporates by reference the arguments set forth by Visa in Section IV(B) of its Memorandum regarding plaintiff's claim under the Virginia Antitrust Act, which is interpreted consistently with federal antitrust law principles and should be dismissed for the same reasons that mandate dismissal of plaintiff's Sherman Act claim.

### C.    Tortious Interference with Business Expectances and Contract

MasterCard adopts and incorporates by reference herein the arguments set forth by Visa Inc. at Section IV (C) of its memorandum with regard to plaintiff's tortious interference claim. The contract between DataCell and PBS/Teller (Complaint, Exhibit A) with which MasterCard is alleged to have interfered, does not contain a term of duration and should therefore be viewed as having created an "at will" relationship.  DataCell does not have a "business expectancy" in an "at will" arrangement[13] and, in all events, has not alleged that MasterCard interfered with that

---

[13] *See Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204 (E.D. Va. 2010) (tortious interference with business expectancy claim requires *objective* proof of (i) the existence of a business relationship or expectancy, with a *probability* of future economic benefit to plaintiff, and (ii) a *reasonable certainty* that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy) (*citing Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 484 S.E.2d 892, 896 (1997).  Here, of course, plaintiff has made no such allegations and it would be rank speculation to suggest that a continued relationship by DataCell with an entity like Wikileaks or with PBS/Teller (to the extent it processed payments earmarked for Wikileaks) was a "reasonable certainty."

relationship by employing "improper means."  The only alleged improper act by MasterCard is the Sherman Act conspiracy claim, which, as demonstrated above, is legally insufficient.

### D.     The Civil Conspiracy Claim

Plaintiffs' "civil conspiracy" claim consists of a single sentence:  "The The Defendants conspired with each other, Lieberman, and King to tortiously interfere with DataCell's economic advantage."  But as the Court held in *Frank Brunckhorst Co., LLC v. Coastal Atlantic, Inc.*, 542 F. Supp.2d 452, 464-65 (E.D. Va. 2008), a civil conspiracy claim cannot be premised on an at-will relationship that could be terminated by either party at any time.

Moreover, in Virginia, "a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."  *Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007).  "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use of unlawful means."  *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942).  Accordingly, where "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong."  *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44, *5 (1995).  *See* generally *Taylor v. CNA Corp.*, *supra, 782* F.Supp. at 205.

Nor, of course, could compliance by MasterCard with a request by Congressional leaders that U.S. companies not do business with an entity that knowingly obtained and disseminated classified U.S. State Department cables be construed as either "improper" or a wrongful act directed against another entity (*i.e.*, DataCell) that, unknown to those officials, was serving as a facilitator for Wikileaks.  Plaintiff's antitrust conspiracy claims are legally insufficient and the suggestion that Senator Lieberman and Representative King conspired to injure *DataCell* (an

obscure Icelandic company that neither Lieberman nor King is alleged to have either heard of or

known about) is absurd.

## **CONCLUSION**

For all the foregoing reasons, as well as the reasons set forth in the Visa

Memorandum, MasterCard Incorporated respectfully requests that the Court dismiss this action.

Dated:  May 8, 2015                                    Respectfully submitted,


                                                                  */s/ Stephen E. Noona*

                                                          Stephen E. Noona
                                                          Virginia State Bar No. 25367
                                                          Mark E. Warmbier
                                                          Virginia State Bar No. 77993
                                                          KAUFMAN & CANOLES, P.C.
                                                          150 West Main Street, Suite 2100
                                                          Norfolk, VA 23510
                                                          Telephone:  (757) 624-3000
                                                          Facsimile:   (757) 624-3169
                                                          senoona@kaufcan.com
                                                          mewarmbier@kaufcan.com


                                                          Martin S. Hyman (pro hac vice filed)
                                                          GOLENBOCK EISEMAN ASSOR BELL &
                                                          PESKOE, LLP
                                                          437 Madison Avenue
                                                          New York, NY 10022
                                                          T (212) 907-7360
                                                          F (212) 754-0777
                                                          mhyman@golenbock.com

                                                          *Counsel for MasterCard Incorporated*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Philip J. Harvey
Virginia State Bar No. 37941
Jesse R. Binnall
Virginia State Bar No. 79292
Louise T. Gitcheva
Virginia State Bar No. 86200
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA  22314
Telephone:  703-888-1943
Facsimile:  703-888-1930
pharvey@harveybinnall.com
jbinnall@harveybinnall.com
lgitcheva@harveybinnall.com

*Counsel for Plaintiff DataCell ehf*

Andrew S. Tulumello (*pro hac vice*)
Robert Gonzalez (*pro hac vice*)
Jacob Siler (Va. Bar No. 80934)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone:  202-955-8500
Fax:  202-467-0539
Atulumello@gibsondunn.com
Rgonzalez2@gibsondunn.com
JSiler@gibsondunn.com

*Counsel for Defendant Visa, Inc.*

  */s/ Stephen E. Noona*

Stephen E. Noona
Virginia State Bar No. 25367
Mark E. Warmbier
Virginia State Bar No. 77993
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (757) 624-3169\
senoona@kaufcan.com
mewarmbier@kaufcan.com

*Counsel for Defendant MasterCard Incorporated*