# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|  |  |  |
|---|---|---|
| DATACELL EHF., | ) | |
|  | ) | |
|  | ) | Civil Action No. 1:14CV1658 (GBL/TCB) |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| VISA INC., VISA EUROPE LTD., and | ) | |
| MASTERCARD INCORPORATED, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY MEMORANDUM OF LAW OF DEFENDANT MASTERCARD INCORPORATED IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF CONTENTS</u>

Page

Table of Authorities .................................................................................................................ii

Preliminary Statement ............................................................................................................. 1

I.     MASTERCARD IS A DELAWARE HOLDING COMPNAY THAT HAS NO
RELEVANT CONTACTS WITH VIRGINIA AND, IN ALL EVENTS, IS NOT
A PROPER PARTY TO THIS CASE ................................................................................. 2

II.    PLAINTIFF HAS FAILED TO ESTABLISH THAT THIS COURT HAS
PERSONAL JURISDICTION OVER MASTERCARD OR THAT VENUE
WAS PROPERLY PLACED IN THIS DISTRICT ............................................................. 3

     A.    Section 12 of the Clayton Act Cannot Authorize the Exercise of General
Jurisdiction over a Defendant Where Such Exercise Would Violate Due
Process ..................................................................................................................... 3

     B.    Plaintiff Has Failed to Meet its Burden of Establishing a Basis
for Specific Jurisdiction over MasterCard ............................................................. 6

     C.    Even if Sections 12's Nationwide Service of Process Provision be a Basis
for Personal Jurisdiction in a Case where Neither General nor Specific
Jurisdiction Over the Defendant Can be Shown, Plaintiff has Failed to Show
that MasterCard Resides, is Found, or Transacts Business, in Virginia ................. 8

III.   PLAINTIFF CANNOT AMEND ITS COMPLAITN BY INTERPOSING NEW
ALLEGATIONS OR THEORIES IN A BRIEF ................................................................. 9

IV.   NOTHING IN PLAINTIFF'S PAPERS DEMONSTRATES THAT PLAITNIFF
HAS ANTITRUST STANDING OR HAS SUSTAINED ANTITRUST INJURY .......... 15

V.    PLAITNIFF'S STATE LAW CLAIMS ARE LEGALLY DEFECTIVE ......................... 17

VI.   LEAVE TO REPLEAD SHOULD BE DENIED BECAUSE ANY FURTHER
AMENDMENT WOULD BE FUTILE ............................................................................ 19

CONCLUSION ....................................................................................................................... 19

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abcor Corp. v. AM Int'l, Inc.*,
   916 F.2d 924 (4th Cir. 1990) ...................................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................10, 14, 15

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985)......................12

*Daimler AG v. Bauman*,
   134 S.Ct. 746 (2014).....................................................................................4, 5, 6, 7

*Daniel v. Am. Bd. of Emergency Medicine*,
   428 F.3d 408 (2d Cir. 2005).....................................................................................8

*Davis v. Cole*,
   999 F. Supp. 809 (E.D. Va. 1998) ..........................................................................12

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   637 F.3d 435 (4th Cir. 2011) ..................................................................................12

*Estate Construction Co. v. Miller & Smith Holding Co., Inc.*,
   14 F.3d 213 (4th Cir. 1994) ....................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S.Ct. 2846 (2011)...........................................................................................6, 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)..................................................................................................6

*Hunt v. Crumboch*,
   325 U.S. 821 (1945)...................................................................................................2

*In re Aluminum Warehousing Antitrust Litigation*,
   2015 WL 892255 (S.D.N.Y. March 3, 2015) ...........................................................5

*Indus. Models v. SNF, Inc.*,
   No. 14 C 8340, 2015 U.S. Dist. LEXIS 64404 (N.D. Ill. May 18, 2015) ...........5, 8

*Katz v. Odin, Feldman & Pittleman, P.C.*,
   332 F. Supp. 2d 909 (E.D. Va. 2004) .....................................................................12

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)......................................................................................6

*KM Enters., Inc. v. Global Traffic Technologies, LLC*,
   725 F.3d 718 (7th Cir. 2013) ....................................................................3, 8

*Long v. Mountain Trust Bank*,
   No. 77-0189 (R), 1981 WL 2226 (W.D. Va. July 24, 1981) ......................2

*Loren Data Corp. v. GXS, Inc.*,
   501 F.App'x 275 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2835 (2013)...................................11

*Robertson v. Sea Pines Real Estate Cos.*,
   679 F.3d 278 (4th Cir. 2012) ....................................................................14

*Rutman Wire Co. v. E.J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ......................................................................2

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
   No. 1:14-cv-191, 2014 WL 3500674 (E.D. Va. July 15, 2014).........................11, 15

*Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*,
   763 F.2d 604 (4th Cir. 1985) ....................................................................11

*Walden v. Fiore*,
   134 S.Ct. 1115 (2014)..............................................................................6, 7

## STATUTES

28 U.S.C. §§ 1331 and 1367 .............................................................................3

Section 1 of the Sherman Act, 15 U.S.C. § 1............................................. passim

Section 12 of the Clayton Act, 15 U.S.C. § 22 ......................................... passim

## OTHER AUTHORITIES

First Amendment .............................................................................................1

Rule 12(b)(6)..................................................................................................12

**Preliminary Statement**

Confronted with abundant legal authority and a declaration demonstrating, *inter alia*, the absence of personal jurisdiction over MasterCard Incorporated ("defendant" or "MasterCard"), improper venue, the insufficiency of the conspiracy claim, the lack of antitrust standing and injury, and the flaws in its state law claims, plaintiff DataCell ("plaintiff" or "DataCell") now seeks to amend its complaint by interposing new allegations and theories in its memorandum in opposition to the motion to dismiss.  Rather than advance its cause, however, these efforts underscore the reasons why the complaint should be dismissed without leave to replead.

The opposition papers leave no doubt that plaintiff, an Icelandic entity with no connection to Virginia, is serving as a front for another Icelandic entity, Sunshine Press, that believes that its "free speech" rights were somehow infringed by U.S. government officials.  (Plaintiff's Br. ("Pl. Br.) at 19-20.)  Unable to articulate a viable claim against MasterCard, establish personal jurisdiction over MasterCard or properly place venue in this Court (and unwilling to subject *itself* to the jurisdiction and scrutiny of this Court), Sunshine Press (a/k/a Wikileaks) has created an artifice:  Using its newly-proclaimed "partner" DataCell to present "free speech" grievances masquerading as "antitrust" claims.  The court should not countenance this charade.

If Sunshine Press believed that its First Amendment rights were violated, it was free to pursue appropriate legal remedies in an appropriate forum.  But a claim under Section 1 of the Sherman Act is not one of those remedies and this Court surely is not an appropriate forum in which Sunshine Press may seek vindication.  Whatever grievances Wikileaks may or may not have against the U.S. government for the purported suppression of "free speech," they do not

provide a basis for any antitrust claim (let alone an antitrust claim interposed by *DataCell*).[1]  *See Hunt v. Crumboch*, 325 U.S. 821, 826 (1945) ("[The Sherman Act] does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."); *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 931 (4th Cir. 1990); *Long v. Mountain Trust Bank*, No. 77-0189 (R), 1981 WL 2226, at *6 (W.D. Va. July 24, 1981) ("[T]his court will not permit a litigant, simply by characterizing activity as a 'conspiracy' and employing boilerplate language concerning an 'attempt to monopolize,' to convert a 'garden variety' business tort into a federal antitrust violation.").[2]

## I.

### MASTERCARD IS A DELAWARE HOLDING COMPANY THAT HAS NO RELEVANT CONTACTS WITH VIRGINIA AND, IN ALL EVENTS, IS NOT A PROPER PARTY TO THIS CASE

As a preliminary matter, plaintiff does not contest the Declaration of James Masterson, submitted by MasterCard in support of the motion, which affirms that MasterCard is simply a holding company with no employees, offices or operations in Virginia and, as such, could not have engaged in the conduct alleged by DataCell to be actionable.  *See* MasterCard's Opening Brief at p. 9, n.3; Masterson Decl. ¶¶ 2-3.)  The complaint can and should be dismissed for this reason alone.

---

[1] *See* Visa's opening memorandum at pp. 8-9 (antitrust complaint lodged by DataCell in 2011 against Visa Europe, MasterCard, and American Express rejected by the European Commission).

[2] *See also Rutman Wire Co. v. E.J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987), ("The pleader may not evade these requirements [of pleading facts to support each element of the claim] by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs will get nowhere merely by dressing them up in the language of antitrust.").

2

## II.

## PLAINTIFF HAS FAILED TO ESTABLISH THAT THIS
## COURT HAS PERSONAL JURISDICTION OVER MASTERCARD
## OR THAT VENUE WAS PROPERLY PLACED IN THIS DISTRICT

**A.**     **Section 12 of the Clayton Act Cannot Authorize the Exercise of General Jurisdiction over a Defendant Where Such Exercise Would Violate Due Process**

Plaintiff concedes, as it must, that in light of defendants' challenge, it has the burden of establishing a basis for personal jurisdiction.  (Pl. Br. at 4.)  There can be no doubt that plaintiff has not come close to meeting this burden as respects MasterCard.

Although the Complaint does not even mention, let alone allege jurisdiction pursuant to, the Clayton Act,[3] plaintiff argues in its opposition brief that the Court has personal jurisdiction over MasterCard based on Section 12 of the Clayton Act, 15 U.S.C. § 22, which provides that:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.[4]

As discussed in MasterCard's opening brief at pages 10-11, neither the nationwide service of process clause in Section 12 nor defendant's contacts with the United States "as a whole" can override the Constitutional requirement that the defendant's contacts with the forum state must meet minimum due process standards in order for the court to exercise personal jurisdiction.

---

[3] *See* Complaint ¶ 6 (alleging jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367).

[4] Section 12 speaks to venue and service of process, but does not explicitly refer to personal jurisdiction.  Nevertheless, the statute was frequently cited, prior to 2014, as a predicate for personal jurisdiction when the defendant was alleged to have sufficient "national contacts" -- *viz*, contacts with the United States as a whole -- and venue was shown to be proper.  *E.g.*, *KM Enters., Inc. v. Global Traffic Technologies, LLC*, 725 F.3d 718, 731 (7th Cir. 2013)  (under Section 12, plaintiff need only show that defendant has "sufficient minimum contacts with the United States as a whole to support personal jurisdiction," but must also satisfy Section 12's venue provision).

Even under Section 12, where issues concerning personal jurisdiction and venue often intersect, the plaintiff must still be required to demonstrate, at the outset, that the court has general or specific jurisdiction over the defendant and that venue is proper.  When, as here, the plaintiff cannot demonstrate that venue is proper, the personal jurisdiction issue becomes largely academic and the case must be dismissed.

The Supreme Court's 2014 ruling in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), made it clear, as a matter of Constitutional law, that in anything other than an exceptional case (which this case clearly is not), the court may exercise general jurisdiction over a corporation only in those states where the corporation is incorporated or maintains its principal place of business. The rationale for this holding was that corporations should be able to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *id.* at 760-62, and it would be fundamentally unfair, and hence a violation of due process, to subject a corporate defendant to all-purpose (general) jurisdiction in a state in which it is not "at home" and in which the challenged conduct did not occur.

Plaintiff appears to argue that *Daimler* is somehow rendered meaningless by Section 12, which has been read to confer all-purpose jurisdiction over defendants in antitrust cases based on "national" (rather than state) contacts.  In plaintiff's view, because Section 12 provides for nationwide service of process, a plaintiff alleging an antitrust claim need not satisfy the due process standard enunciated in *Daimler*.  In fact, the opposite is true.  Because *Daimler* established a Constitutional standard that cannot be trumped by a statute (and particularly, as in this case, by a statute that does not explicitly refer to personal jurisdiction), any application of

Section 12 in a manner inconsistent with that standard would violate due process and should not be upheld.[5]

Plaintiff asserts that neither the Supreme Court nor any circuit court has held the so-called "national contacts" test to be unconstitutional.  (Pl. Br. at 9.)  But MasterCard does not contend that Section 12 is unconstitutional *per se*, as there may well be many situations in which the exercise of personal jurisdiction under Section 12 will not violate due process.  Rather, MasterCard asserts that under the circumstances of this case, and consistent with the holding in *Daimler*, this Court should not assert general jurisdiction (under Section 12 or otherwise) over MasterCard.[6]

In *Daimler*, the Court did not create or even allude to an exception for antitrust cases brought pursuant to Section 12.  To the extent that the application of Section 12 would compel a court to exercise personal jurisdiction over a defendant based solely on "national contacts" (and without applying the rules for of general and specific jurisdiction), such an interpretation would raise serious Constitutional questions.

While at least one court has concluded, post-*Daimler*, that Section 12 automatically confers personal jurisdiction over any corporation with "substantial ties to the United States," *Indus. Models v. SNF, Inc.*, No. 14 C 8340, 2015 U.S. Dist. LEXIS 64404 (N.D. Ill. May 18, 2015),[7] the court emphasized that this conclusion "d[id] not end the matter, however, as [plaintiff] still has the burden of establishing that venue is proper here."  And, in *In re Aluminum*

---

[5] Of course, Section 12 does not even come into play if plaintiff's federal antitrust claim is held to be defective.

[6] In *Daimler*, the Court assumed that the California contacts of Daimler's U.S. subsidiary MBUSA (which are far more extensive than MasterCard's contacts with Virginia) could be attributed to Daimler, but nevertheless held that those contacts were insufficient to permit the lower court to exercise all-purpose jurisdiction over Daimler.

[7] Courts in this Circuit have not had occasion to address this issue.

*Warehousing Antitrust Litigation*, 2015 WL 892255 at *1 (S.D.N.Y. March 3, 2015), the court held that, while the "national contacts" test of Section 12 *may* provide a basis for personal jurisdiction over a person or entity having no contacts with a particular state, in all such cases the "Court must [still] determine whether the assertion of personal jurisdiction comports with principles of due process."  This determination would require an inquiry into the nature and extent of the defendant's contacts with the forum state, whether the defendant is "at home" in that state and, if not, whether there is any basis for specific jurisdiction over the defendant.

The test for general jurisdiction, as enunciated in *Daimler*, clearly cannot be satisfied in this case because it is undisputed that MasterCard is not incorporated in Virginia and does not maintain its principal place of business here. (Masterson Decl. ¶ 2.)  And, as shown below, plaintiff has neither alleged nor even attempted to demonstrate any basis for specific jurisdiction.

### B.    Plaintiff Has Failed to Meet its Burden of Establishing a Basis for Specific Jurisdiction over MasterCard

The Supreme Court has long held that specific jurisdiction exists in a suit that "aris[es] out of or relate[s] to the defendant's contacts with the forum . . . . ."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2849-50 (2011).  The inquiry into whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'"  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (*quoting Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  The Supreme Court has clearly held that before "a state [may] exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).  Because DataCell has not alleged, and has presented no evidence to suggest, that any of the claims asserted against MasterCard in the complaint arose

from MasterCard's activities in Virginia, there is no basis for specific jurisdiction over MasterCard in this case.

Plaintiff's *only* attempt to show any contact by MasterCard with Virginia is a meaningless (and grossly misleading) reference to a Virginia Department of Taxation ("DOT") website.  (Pl. Br. at 12.)  Plaintiff contends that MasterCard contracted with the DOT to allow Virginia citizens to use MasterCard debit cards to obtain tax refunds.  But even if this were true, which it is not, any such contract would have nothing whatsoever to do with the claims alleged in the complaint, would not establish any "suit-related connection to the state," and thus could not provide even a colorable basis for specific jurisdiction.  In all events, plaintiff's characterization of the tax refund program is demonstrably incorrect.

The Reply Declaration of James P. Masterson, dated June 15, 2015 ("Masterson Rely Decl.") confirms that MasterCard is nothing more than a holding company.   Neither MasterCard nor its subsidiary MasterCard International Incorporated issues debit cards, acquires debit card transactions or enters into contracts with states concerning the disbursement of tax refunds.  *Id*. at ¶ 2.  It is clear on the face of the website that neither MasterCard nor MasterCard International Incorporated is a party to the Virginia tax refund program, which involves Xerox, Comerica Bank and a firm called Local Solutions, Inc.  *Id*. at ¶¶ 3-5.[8]

The recent Supreme Court decisions in *Daimler*, *Goodyear* and *Walden* establish due process criteria for the exercise of personal jurisdiction over a defendant.   These requirements cannot be swept aside by Section 12 of the Clayton Act or any other statute.  But even if Section 12 could be read to confer personal jurisdiction over a defendant in an antitrust case simply by

---

[8] MasterCard International Incorporated licenses the MasterCard trademark to banks such as Comerica.  These license agreements are executed in New York.  (Masterson Reply Decl. ¶ 5.)

reason of a defendant's contact with the United States "as a whole," application of Section 12's venue clause would still mandate dismissal of this case.

### C. Even if Section 12's Nationwide Service of Process Provision Could be a Basis for Personal Jurisdiction in a Case where Neither General nor Specific Jurisdiction Over the Defendant Can be Shown, Plaintiff has Failed to Show that MasterCard Resides, is Found, or Transacts Business, in Virginia

Even if Section 12 could somehow be read to immunize antitrust plaintiffs from having to satisfy Constitutional due process requirements for establishing personal jurisdiction, the Court should nevertheless dismiss this case because there is no proper basis for venue in this District. *See* cases cited in MasterCard's Opening Brief at pp. 11-12.   To invoke the nationwide service of process provision, plaintiff must meet the venue test prescribed by Section 12; to establish venue under Section 12, plaintiff must demonstrate that MasterCard resides, is found, or transacts business, in Virginia.  *See*, *e.g.*, *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 427 (2d Cir. 2005).

A corporation  is a resident or "inhabitant" of a state in which it is incorporated  or maintains its principal place of business; and it is "found" only in those districts where it "carries on continuous local activities."   *Indus. Models, supra*, 2015 U.S. Dist. LEXIS No. 64404 at *8-9. As discussed above and below, MasterCard is not an inhabitant of Virginia and is not "found" here.

MasterCard does not transact business in Virginia.  "Transacting business" in the context of Section 12 involves "doing business or carrying on business of any substantial character."  *KM Enters., supra*, 725 F.3d at 731.   In *Indus Models*, the court dismissed an action brought pursuant to Section 12 where the Defendant had "no employees, no offices, no presence in this district" and did not do business "of any substantial character" in the district.  2015 U.S. Dist. LEXIS No. 64404 at *7.  And, in *KM Enterprises*, the Court dismissed the action on grounds of improper

8

venue where defendant's activities in the Southern District of Illinois were characterized as *de minimis* for "transacting-business" purposes.  Here, MasterCard's activities in this District are less than *de minimis*; they are virtually non-existent.

The complaint does not allege any facts to suggest that MasterCard "transacts business" in the Eastern District of Virginia, and does not even mention Section 12.  The only reference to Virginia or "Virginians" in the complaint is found in paragraph 38, which relates to a state antitrust claim.  Finally, as discussed above, the assertion in plaintiff's opposition brief that the DOT allows Virginia taxpayers to obtain refunds via MasterCard debit cards issued by Comerica Bank pursuant to a program administered by Xerox and Local Solutions, Inc. proves nothing and surely does not demonstrate that MasterCard engages in the type of "continuous or systematic general business contacts" in Virginia necessary to satisfy the "transacting business" test under Section 12.

In summary, it is undisputed that:  MasterCard has no employees or offices in Virginia; does not issue MasterCard credit or debit cards in Virginia (or anywhere else); does not acquire MasterCard card transactions in Virginia.  And, of course, none of the "anticompetitive" or tortious conduct attributed to MasterCard in the complaint is alleged to have occurred in Virginia. *See* Masterson Decl. at ¶ 3; Masterson Reply Decl. at ¶ 2.

This case should be dismissed not only for want of personal jurisdiction, but also on grounds of improper venue.

### III.

### PLAINTIFF CANNOT AMEND ITS COMPLAINT BY INTERPOSING NEW ALLEGATIONS OR THEORIES IN A BRIEF

The complaint in this case purports to allege only one conspiracy:  that defendants "successfully conspired *with each other*, at the insistence of Senator Lieberman and Congressman

King, to prevent DataCell from receiving any payments using their credit cards by instructing PBS Teller and Valitor to cease providing services to Sunshine Press, . . . ."  (Compl. ¶ 23 (emphasis added).)  Conspicuously absent from the complaint is any allegation concerning the time or place at which, or the manner by which, this putative conspiracy between the defendants was entered into.  The complaint does not allege (and the opposition papers do not aver) that MasterCard or Visa ever communicated with each other or otherwise coordinated (or "signaled") their responses to the alleged government contacts.[9]  In short, the complaint alleges nothing more than parallel conduct from which no inference of the presumed conspiracy could plausibly be drawn.  Plaintiff has failed to allege any facts that would support a reasonable inference of conspiracy, and the notion that MasterCard would need to "conspire" with Visa regarding Sunshine Press makes no sense, particularly in light of plaintiff's allegation that influential members of Congress publicly and privately asked American companies not to facilitate the activities of an entity that was deemed to be a "terrorist" organization and a threat to national security.[10]  (Compl. at ¶ 14.)  If anything, this allegation would suggest that MasterCard had an entirely independent reason not to want its trademarks to be associated with such an entity.

Plaintiff acknowledges that the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), provides the appropriate standard for assessing the sufficiency of its complaint, but makes no credible attempt to demonstrate that it has met that standard.  Nor does plaintiff even mention, let alone attempt to distinguish, the four cases from this Circuit that were

---

[9] Contrary to plaintiff's suggestion (Pl. Br. at 13), these are not "superfluous details" in the context of a claim under Section 1 of the Sherman Act.

[10] In its opposition papers, plaintiff suggests that these characterizations of Wikileak's conduct were part of an attempt by government officials to chill free speech in the "news media marketplace."  (Pl. Br. at 19-20.)  This conjecture does not give rise to an antitrust claim, but even if it did, DataCell clearly would not be a proper party to assert such a claim.

cited in MasterCard's opening brief in connection with the requirements for alleging an antitrust conspiracy.  *See e.g.*, *Loren Data Corp. v. GXS, Inc.*, 501 F.App'x 275, 280-81 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2835 (2013); *Estate Construction Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 221 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 611 (4th Cir. 1985); *SD3, LLC v. Black & Decker (U.S.), Inc.*, No. 1:14-cv-191, 2014 WL 3500674 (E.D. Va. July 15, 2014).

On this motion, plaintiff is bound by the allegations in its complaint.  The complaint alleges that:  (i) U.S. government staffers *separately* contacted MasterCard and Visa to request that they not allow their credit cards to be used in connection with transactions involving Wikileaks, an entity for which DataCell was simply a service provider/conduit; (ii) defendants *separately* instructed PBS/Teller, the bank that acquired transactions submitted by DataCell, to suspend processing transactions from DataCell relating to Sunshine Press (Wikileaks); (iii) defendants gave these instructions to PBS/Teller on the same day (alleged to be December 7, 2010); and (iv) defendants did not have a "legitimate economic reason" to prevent credit card payments to DataCell.  (Complaint at ¶¶ 15, 17, 28.)  Simply stated, the complaint alleges that defendants reacted similarly to requests by government officials that American companies not allow credit cards bearing their trademarks to be used to funnel funds to an entity that was reported to have stolen and illegally disseminated classified State Department and other government documents and thereby created an actual or potential national security risk.  Based solely on these allegations, DataCell asks the court to infer an antitrust conspiracy between the defendants.

Tacitly acknowledging the futility of its MasterCard/Visa "conspiracy" hypothesis, plaintiff switches gears in its opposition papers and now suggests that the complaint actually

alleges "multiple conspiracies entered into by each defendant" (Pl. Br. at 12), including

conspiracies with "Government Officials" and PBS/Teller (the acquiring bank for credit card

transactions submitted by DataCell).  According to plaintiff, Visa and MasterCard *independently*

conspired with Congressional leaders and banks and "separately violated Section 1 of the

Sherman Act."  (*id.* at 12-14).  These revisionist conspiracy claims are not set out in the complaint

and should therefore be disregarded.  But even if they had been alleged, they would fare no better

than plaintiff's initial flawed theory.

First, the complaint does not plead "multiple conspiracies" and it is basic law that a

plaintiff cannot amend a defective complaint by interposing new claims or allegations in a brief

submitted in opposition to a motion to dismiss.  *See, e.g., Car Carriers, Inc. v. Ford Motor Co.*,

745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by

the briefs in opposition to a motion to dismiss"), *cert. denied*, 470 U.S. 1054 (1985);  *Katz v.

Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (same) (quoting

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)); *Davis v.

Cole*, 999 F. Supp. 809, 813 (E.D. Va. 1998) ("The court may not consider additional allegations

when ruling on a motion to dismiss and must consider the facts asserted in the complaint, and the

attached exhibits, to be true."); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

F.3d 435, 449 (4th Cir. 2011) ("statements by counsel that raise new facts constitute matters

beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion").

Second, the newly-minted "conspiracies" are inconsistent with allegations in the

complaint.  For example, plaintiff suggests in its opposition brief that "the Government Officials

instructed their respective staffs to contact the [defendants] *in hopes of convincing them* to block

donations to Wikileaks."  (Pl. Br. at 14) (emphasis added).  Efforts by Congressional staffers to

convince credit card companies to block donations to Wikileaks do not constitute agreements or "conspiracies" of any sort, let alone conspiracies that injure competition in a relevant market. Nor can it be seriously suggested that the suspension of credit card transactions submitted by an entity that was fronting for another entity that the U.S. government declared to be a threat to national security would lack any "legitimate economic" justification or be inconsistent with a card company's inherent and obvious need to protect its brand image and goodwill.

That plaintiff is simply grasping at straws in an effort to invent an antitrust claim is perhaps best revealed by the inconsistencies between the complaint and plaintiff's opposition brief. For example, the complaint alleges that the "defendants successfully conspired *with each other* at the insistence of Senator Lieberman and Congressman King." (Compl. At ¶ 23) (emphasis added).) It does not allege conspiracies between each defendant and Senator Lieberman or Congressman King.[11]  Nor does the complaint allege how (or even "that") government officials served as "intermediaries" for communications between or among the defendants (Pl. Br. at 14) or any concerted conduct by PBS/Teller or Valitor. While plaintiff now suggests that the actions of MasterCard and Visa "were coordinated through . . . the Government Officials and their respective staffs" (Pl. Br. at p. 14), it presents no facts concerning any such "coordination." The complaint alleges that staff members coordinated efforts among themselves (Compl. ¶15), not that they elicited or coordinated any joint efforts by MasterCard and Visa. In

---

[11] The suggestion that Senator Lieberman and Congressman King personally engaged in separate antitrust conspiracies with MasterCard and Visa by directing their staffers to try to convince those companies (as well as other American companies) not to fund or otherwise facilitate the activities of an entity that knowingly obtained and published classified State Department and other documents is not simply a novel concept of antitrust jurisprudence. It is an ill-conceived abuse of the antitrust laws. *See* Visa's Reply Memorandum at p. 11, n.4.

this regard, the complaint is devoid of any allegations concerning any communication, coordination or signaling between or among MasterCard and the Visa defendants.[12]

The futility of the complaint is further underscored by plaintiff's statement that defendants' conduct "amounts to more than simple parallel conduct.  It is independent and actionable parallel conspiracies."  (Pl. Br. at 14.)  No "independent" or "parallel" conspiracies are alleged in the complaint[13] and, to the extent that plaintiff relies on inferences from parallel conduct, it is clear -- and largely conceded by plaintiff -- that parallel conduct, without more, is insufficient to allege a violation of Section 1 of the Sherman Act.  As the Court observed in *Twombly*, 550 U.S. at 556-57:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*See also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 289 (4th Cir. 2012) ("Because to actually prove a § 1 conspiracy requires evidence that tends to exclude the possibility of independent action, allegations of parallel conduct in a complaint must be placed in a context that raises a suggestion of a preceding agreement, as distinct from identical, independent action.")

---

[12] Nor could any such inference be plausibly drawn from the allegation that both companies gave instructions to PBS/Teller on the same day.  (Compl. at ¶ 17.)  The allegation that card companies acted promptly and/or spontaneously in response to alleged contacts by government officials concerning a matter of national concern would suggest, if anything, the absence of any "coordination."

[13] It is unclear what plaintiff means by "parallel conspiracies" or how this new verbiage would cure the multiple deficiencies in the complaint or add substance to what is otherwise a bare-bones pleading.

(citations and quotations omitted).  As this Court stated in *SD3, LLC v. Black & Decker (U.S.), Inc.*, No. 1:14-cv-191, 2014 WL 3500674, at *2 (E.D. Va. July 15, 2014):

> Section 1 of the Sherman Act prohibits concerted action to restrain trade through a 'contract, combination in the form of trust or otherwise, or conspiracy,' but does not prohibit different market actors ultimately coming to the same conclusion on a particular issue. The latter behavior, 'parallel conduct,' even when consciously undertaken, needs some setting suggesting the agreement necessary to make out a [Sherman] § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory (citations and quotations omitted).

The Supreme Court's decision in *Twombly* not only affirms, but also reinforces, the authority (and, indeed, the obligation) of federal courts to dismiss pleadings that fail to allege, with appropriate specificity, cognizable antitrust conspiracy claims.  The Court should apply that standard in this case to avoid a further waste of judicial and private resources.  Whatever displeasure Wikileaks may feel regarding the alleged suppression of "free speech," the "stifl[ing]" of participation in the "free market place of ideas," the presumed desire of American companies to "ingratiate themselves" to government officials, or the sufficiency of Wikileaks' efforts to publicize its claimed justifications (Pl. Br. at 1, 19-20), two things are clear:  Putting aside the antitrust buzzwords, this is not, and never has been, an antitrust case, and DataCell is without standing to even pretend that it is.  Plaintiff's recourse, if any, does not lie with the Sherman or Clayton Acts.  *See* cases cited at pp. 1-2 & n.1, *supra*.

## IV.

### NOTHING IN PLAINTIFF'S PAPERS DEMONSTRATES THAT PLAINTIFF HAS ANTITRUST STANDING OR HAS SUSTAINED ANTITRUST INJURY

To avoid burdening the Court with duplicative arguments, MasterCard incorporates by reference the arguments made in Point II of Visa Inc.'s reply memorandum concerning plaintiff's

lack of antitrust standing and injury.  In so doing, we emphasize that the complaint alleges that plaintiff is a "technical support" service provider to Sunshine Press (Compl. ¶¶ 7-8), but not a "partner" of Sunshine Press nor a "member of the news media," as plaintiff would now have the Court believe.  (Pl. Br. at p. 17.)  The Court should reject this transparent effort to forestall dismissal of a patently deficient complaint.

Neither the "market place for ideas" (Compl. ¶ 29) nor the amorphous "news media marketplace" (Pl. Br. at p. 15) is a cognizable relevant market and the complaint fails to allege any facts to suggest that the deauthorization of certain credit card transactions involving Wikileaks had any effect on the "news media marketplace" or on a newly-conceived "market" that would include "traditional media outlets, such as newspapers, radio, and television [in addition to] . . . blogs, podcasts, and dedicated Internet sites" (Pl. Br. at p. 17).  An antitrust plaintiff does not state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, by invoking antitrust buzzwords or phrases like "pernicious effect on competition" (*id.*) without coherently defining a relevant market and alleging facts to show that *competition* in that market has been materially suppressed as a result of defendants' actions.  And this is a particularly glaring defect when the plaintiff is not the entity that was competing in the market in which competition was allegedly suppressed, but rather was a surrogate through which "donations" were being funneled. In short, alleging that Wikileaks may have lost some donations and that its service provider DataCell may have lost its 5% commission on such donations by reason of a deauthorization of some credit card transactions does not establish that competition in a cognizable market has been impaired or injured in any way and surely does not confer antitrust standing on DataCell.

On the matter of antitrust injury, DataCell concedes that its "damages" consist only of the loss of its 5% fee (commission) on certain credit card transactions it previously processed for

Wikileaks (Pl. Br. at 20).  For the reasons set forth in MasterCard's opening brief at pp. 19-21, this is not "antitrust injury" (*i.e.*, the type of injury that the antitrust laws are intended to redress). To the extent that plaintiff seeks to allege that competition in the "news media market" was suppressed by reason of a conspiracy directed at Wikileaks, it fails to recognize that the loss of future commissions by a surrogate/vendor of the alleged target does not qualify as "antitrust injury."  DataCell is not alleged in the complaint to be a participant in any "media market" and calling itself a "partner" of Sunshine Press (in opposition papers) cannot change that fact or transform a commission into something else.

## V.

### PLAINTIFF'S STATE LAW CLAIMS ARE LEGALLY DEFECTIVE

MasterCard joins in the substantive arguments presented by Visa in Point IV of its reply memorandum concerning the state law claims.  In so doing, we emphasize that there is no basis to apply Virginia antitrust or tort law to an entity that has no presence in, or significant contacts with, Virginia, particularly when the conduct about which plaintiff complains is not alleged to have occurred in Virginia.  *See* Visa Reply memorandum at pp. 13-14 & n.5.

With regard to DataCell's assertion, in response to defendants' motion to dismiss the Virginia Antitrust Act claim, that defendants' conduct rendered it unable to compete in Virginia or in the "Virginia market" (Pl. Br. at p. 23), one can only ask:  What "Virginia market" is the plaintiff referring to?  Surely, this "market" is nowhere mentioned in the complaint, which describes DataCell as an Icelandic company that provided technical services, including "server hosting," to Sunshine Press and other companies (presumably in Scandinavia).  (Compl. ¶ 7.)  Nor is this "Virginia market" synonymous with the "news media market" or the "market place of ideas."  Moreover, the complaint does not allege that DataCell had or has any connection to

17

Virginia, let alone that it competes with anyone, or in any "news media" or other purported market, in Virginia.[14]

With regard to the putative tortious interference claim, we emphasize plaintiff has failed to allege any actionable conspiracy or other "improper methods."  In its opposition, plaintiff characterizes defendants' behavior as improper because "[i]t is not normal for a credit card company to block individuals from transacting business with a company like DataCell."  (Pl. Br. at p. 25.)[15]  The law of tortious interference does not define "improper methods" to include a presumed "divergence from normal business practices" -- a rather bizarre concept that made its debut in plaintiff's opposition brief.  (Pl. Br. at 26.)   A business decision that may not conform to plaintiff's view of what is "normal" is not an "improper method" under tort law, particularly in the circumstances of this case, where an entity in the chain of fund transfers was accused by senior government officials of stealing classified government documents and engaging in a form of espionage.  Since this so-called "divergence from normal business practice" also forms the basis for plaintiff's civil conspiracy claim (*id*.), that claim should similarly be dismissed on the pleadings.

---

[14] Ironically, under the scenario alluded to in the complaint, a Virginia citizen who wished to use his or her credit card to donate money to Wikileaks would not even know what DataCell is or that it was acting as a surrogate "merchant." Nor is it alleged in the complaint that the government officials who spoke out against Wikileaks had ever even heard of DataCell.

[15] Apart from having no legal relevance, this statement is mere rhetoric.  Plaintiff has no basis to opine on what is "normal" for a credit card company and does not even attempt to explain what "a company like DataCell" is intended to mean.

**VI.**

**LEAVE TO REPLEAD SHOULD BE DENIED BECAUSE
ANY FURTHER AMENDMENT WOULD BE FUTILE**

MasterCard incorporates by reference the arguments presented in Point V of Visa's reply memorandum concerning, *inter alia*, the futility of plaintiff's efforts to state a claim and the other reasons why leave to amend should be denied.  We further note that plaintiff has already had two bites at the proverbial apple (in the European Commission and now in this Court) and has attempted to amend its complaint yet again by means of its opposition brief.  None of these efforts can manufacture jurisdiction, create proper venue or cure the other inherent defects in the complaint.  The Court has already seen (in plaintiffs' opposition brief) a preview of what any proposed amended pleading by DataCell might look like and (in this reply memorandum) the reasons why these new allegations and hypotheses will accomplish nothing other than to perpetuate a waste of judicial and private resources.  This is not an antitrust case and granting plaintiff leave to replead should be denied on grounds of futility and prejudice.

**CONCLUSION**

For all the reasons set forth herein, in MasterCard's opening brief, and in Visa's memoranda, the complaint should be dismissed without leave to replead.

Dated:  June 19, 2015                              Respectfully submitted,

                                                            */s/ Stephen E. Noona*

                                                         Stephen E. Noona
                                                         Virginia State Bar No. 25367
                                                         KAUFMAN & CANOLES, P.C.
                                                         150 West Main Street, Suite 2100
                                                         Norfolk, VA 23510
                                                         Telephone:  (757) 624-3000
                                                         Facsimile:   (757) 624-3169
                                                         senoona@kaufcan.com
                                                         mewarmbier@kaufcan.com

Martin S. Hyman (pro hac vice)
GOLENBOCK EISEMAN ASSOR BELL &
PESKOE, LLP
437 Madison Avenue
New York, NY 10022
T (212) 907-7360
F (212) 754-0777
mhyman@golenbock.com

*Counsel for MasterCard Incorporated*

### CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Philip J. Harvey
Virginia State Bar No. 37941
Jesse R. Binnall
Virginia State Bar No. 79292
Louise T. Gitcheva
Virginia State Bar No. 86200
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA   22314
Telephone:  703-888-1943
Facsimile:  703-888-1930
pharvey@harveybinnall.com
jbinnall@harveybinnall.com
lgitcheva@harveybinnall.com

*Counsel for Plaintiff DataCell ehf.*

Andrew S. Tulumello (*pro hac vice*)          */s/ Stephen E. Noona*
Robert Gonzalez (*pro hac vice*)
Jacob Siler (Va. Bar No. 80934)             Stephen E. Noona
GIBSON, DUNN & CRUTCHER LLP                 Virginia State Bar No. 25367
1050 Connecticut Avenue, NW                 KAUFMAN & CANOLES, P.C.
Washington, D.C. 20036                      150 West Main Street, Suite 2100
Telephone:  202-955-8500                    Norfolk, VA 23510
Fax:  202-467-0539                          Telephone:  (757) 624-3000
Atulumello@gibsondunn.com                   Facsimile:  (757) 624-3169\
Rgonzalez2@gibsondunn.com                   senoona@kaufcan.com
JSiler@gibsondunn.com                       mewarmbier@kaufcan.com

*Counsel for Defendant Visa, Inc.*          *Counsel for Defendant MasterCard Incorporated*