IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| DATACELL EHF., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-1658 (GBL/TCB) |
| ) | |
| VISA, INC., VISA EUROPE LTD., and ) | |
| MASTERCARD INCORPORATED ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Visa, Inc. ("Visa")'s Motion to

Dismiss (Doc. 21) and Defendant MasterCard Incorporated ("MasterCard")'s Motion to Dismiss

the Complaint ("MasterCard's Motion to Dismiss") (Doc. 25) (collectively, "Motions to

Dismiss"). This case involves Plaintiff DataCell ehf. ("DataCell")'s claims against Visa and

MasterCard (collectively, "Defendants") alleging that the two conspired to restrain trade in

violation of Section 1 of the Sherman Act by ordering their licensees to stop payment processing

for DataCell and its partner, Sunshine Press, in the wake of controversy surrounding Sunshine

Press' website, WikiLeaks.

There are three issues before the Court. First, whether the Court should grant

Defendants' Motions to Dismiss where Defendants argue that DataCell cannot establish personal

jurisdiction under Section 12 of the Clayton Act. Second, whether the Court should grant

Defendants' Motions to Dismiss where Defendants argue that DataCell cannot establish

standing—either Article III standing or antitrust standing—requisite to bring its claims. Third,

whether the Court should grant Defendant' Motions to Dismiss where Defendants argue that

DataCell fails to plead facts sufficient to state claims for relief on any of its counts. The Court finds that it cannot exercise personal jurisdiction over MasterCard because MasterCard conducts no business in the forum as required by Section 12 of the Clayton Act. The Court also finds that DataCell does not establish standing, and that DataCell does not plead facts sufficient to state a claim. The Court will not grant DataCell leave to amend its Complaint because doing so would be futile and prejudicial. Therefore, the Court GRANTS Defendants' Motions to Dismiss and the Court dismisses the Complaint without leave to amend.

## I. BACKGROUND

DataCell is an Icelandic corporation which provides server hosting and technical support to companies including Sunshine Press Productions, ehf. ("Sunshine Press"), a media organization which operates the controversial website WikiLeaks. (Compl. ¶¶ 7–8). Visa, a Delaware corporation with its principal place of business in California, and MasterCard, a Delaware Corporation with its principal place of business in New York, are payment card companies. (*Id.* ¶¶ 2, 4, 9).

Sunshine Press subsists on public donations, in part via credit cards issued under the Visa and MasterCard brand names. (*Id.* ¶ 9). DataCell has a contract with Sunshine Press that entitles it to five percent of donations. (*Id.* ¶ 32). In October of 2010, DataCell and Sunshine Press entered an at-will agreement with PBS International A/S of Denmark ("Teller") to process their credit card transactions in Iceland. (*Id.* ¶ 10). In November of 2010, Sunshine Press leaked diplomatic cables from the Unites States State Department, drawing outrage from then-Senator Joseph Lieberman ("Lieberman") and U.S. Representative and then-Chairman of the House Committee on Homeland Security Peter King ("King"). (*Id.* ¶ 11–12).

King publically criticized Sunshine Press and tried to have it classified as a terrorist organization. (*Id.* ¶ 13–14). At some unspecified point, Lieberman and King instructed their respective staffs to contact Defendants and request that Defendants stop payment processing on donations for Sunshine Press. (*Id.* ¶ 15). On December 7, 2010, Defendants contacted Teller and instructed it to halt payment processing from their cards in support of DataCell because of its relationship with Sunshine Press. (*Id.* ¶ 17). The next day, Teller complied. (*Id.* ¶ 18). On June 15, 2011, DataCell contracted for credit card processing services with Valitor, Defendants' licensee in Iceland. (*Id.* ¶¶ 19–20). On July 8, 2011, Valitor, at Defendants' requests, stopped all Visa and MasterCard processing for DataCell. (*Id.* ¶ 21).

On December 8, 2014, DataCell filed a four-count Complaint against Visa, Visa Europe, and MasterCard. The Complaint alleged violation of the Sherman Antitrust Act (15 U.S.C. § 1) (Count I), tortious interference with business expectancies and contract (Count II), violation of the Virginia Antitrust Act (Va. Code § 59.1-9.12(b)) (Count III), and civil conspiracy (Count IV). (Compl. ¶¶ 22–42). On May 8, 2015, Visa and MasterCard each filed motions to dismiss DataCell's Complaint.

## II. STANDARDS OF REVIEW

### *12(b)(2) Lack of Personal Jurisdiction*

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(2), a court may dismiss a case for lack of personal jurisdiction. The plaintiff must establish by a preponderance of evidence that personal jurisdiction exists. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). When addressing the 12(b)(2) question on only the complaint and supporting legal memoranda, however, the plaintiff need only make a *prima facie* showing of jurisdictional basis to survive the motion. *Pearson v. White Ski Co.*, 228 F. Supp. 2d 705, 707 (E.D. Va. 2002) (citing *Combs,* 886

F.2d at 676).  The Court must construe all factual allegations in the light most favorable to the nonmoving party. *Id.*  Virginia's long-arm statute is in accord with the limits of the Due Process Clause of the United States Constitution. *See English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir. 1990).

### *12(b)(1) Standing*

While Defendants do not cite a specific rule in arguing lack of standing, motions to dismiss relying on standing are tested under FRCP 12(b)(1) lack of subject matter jurisdiction. *See Taubman Realty Grp. Ltd. P'ship v. Mineta,* 320 F.3d 475, 480–81 (4th Cir. 2003) (affirming 12(b)(1) dismissal for lack of standing).  Courts grant 12(b)(1) motions "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).  The burden of proof for establishing standing is on the party claiming subject matter jurisdiction. *Mirant Potomac River, LLC v. EPA,* 577 F.3d 223, 226 (4th Cir. 2009).

Standing is a fundamental doctrine that reflects the mandate from Article III of the Constitution that courts may hear only cases and controversies. *Summers v. Earth Island Inst.,* 555 U.S. 488, 492–93 (2009).  Article III standing requires (1) injury in fact that is concrete and actual or imminent, (2) a causal connection between the injury and the act(s) complained of, and (3) a likelihood that the court can provide redress. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Antitrust standing is a more stringent standard meant to limit standing in antitrust cases to those plaintiffs harmed most directly by the antitrust violation. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 219 (4th Cir. 1987).  Courts determine antitrust standing by weighing five factors: (1) the causal link between the harm alleged and an antitrust violation;

4

(2) whether the alleged harm was of the type Congress intended to rectify in promulgating the antitrust laws; (3) the proximity of the plaintiff to the alleged injury; (4) the existence of other potential plaintiffs more directly harmed by the violation; and (5) the ability of the Court to identify and apportion proper damages. *Kloth v. Microsoft,* 444 F.3d 312, 324 (4th Cir. 2006) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 538, 540, 545 (1983)).

### 12(b)(6) Failure to State a Claim

A court should grant a 12(b)(6) motion unless the complaint "states a plausible claim for relief" under Rule 8(a). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). The Court "must accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "Naked assertions," without factual support, are not enough to carry the plausibility standard. *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 543 (4th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). Likewise, simply listing the elements of a cause of action will not survive a 12(b)(6). *See id.* The complaint must allege sufficient facts, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 555, 570. In a Sherman Act case, parallel conduct alone is not sufficient factual basis to state a claim when other factors may also justify the conduct. *See Robertson v. Sea Pines Real Estate Companies, Inc.,* 679 F.3d 278, 289 (4th Cir. 2012) (citing *Twombly,* 550 U.S. at 554).

### III. ANALYSIS

The Court GRANTS Defendants' Motions to Dismiss because (1) DataCell fails to establish personal jurisdiction with respect to MasterCard because MasterCard, a holding company, is not found, nor does it conduct business in the District as required by Section 12 of the Clayton Act; (2) DataCell fails to establish injury in fact and redressability necessary for Article III standing, and antitrust injury necessary for antitrust standing; and (3) DataCell's Complaint is devoid of any facts that plausibly support a cause of action and as such, DataCell fails to state a claim for relief.  Furthermore, it is clear from the pleadings that allowing DataCell to amend its Complaint would be futile and prejudicial; thus, the Court dismisses the Complaint without leave to amend.

#### *A. Personal Jurisdiction*

The Court grants MasterCard's Motion because MasterCard is a holding company with no contacts with the forum whatsoever and as such, the Court cannot exercise personal jurisdiction over MasterCard even using Section 12 of the Clayton Act.  DataCell cannot establish personal jurisdiction using traditional minimum contact or general jurisdiction tests because none of the conduct or harm alleged occurred in Virginia, and because neither defendant is at home in the state.  However, DataCell argues that the Court may exercise personal jurisdiction over Defendants pursuant to Section 12 of the Clayton Act.

Section 12 of the Clayton Act affords antitrust plaintiffs an easier path to establishing personal jurisdiction because it allows universal service of process, and service of process confers personal jurisdiction on the forum in which it occurs. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (explaining that Section 12 allows an antitrust plaintiff to serve a defendant nationwide); *Burnham v. Superior Court of Cal., Cnty. of*

6

*Marin*, 495 U.S. 604, 627 (1990) (upholding in-state service as a valid avenue to personal jurisdiction). Congress intended Section 12 to make antitrust suits more practical as "it relieved persons injured . . . from the 'often insuperable obstacle' of resorting to distant forums." *Donlan v. Carvel*, 193 F. Supp. 246, 247–48 (D. Md. 1961) (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 808 (1948)). The statute has two clauses. The first clause deals with venue and states that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district *whereof it is an inhabitant*, but also in any district *wherein it may be found or transacts business* . . . ." 15 U.S.C. § 22 (emphasis added). The second clause allows for universal service of process; it reads, "all process in such [antitrust] cases may be served in the district of which [the defendant] is an inhabitant, or *wherever it may be found.*" *Id.* (emphasis added).

A circuit split exists over whether Section 12's service-of-process clause needs to be read in conjunction with its venue clause, or if a plaintiff may obtain personal jurisdiction via the service-of-process clause and venue via another statute such as 28 U.S.C. § 1391(b). *See In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1194–96 (N.D. Ala. 2014) (providing an overview of the split). As the Fourth Circuit has yet to rule on the issue, the Court will adopt the majority view that Congress intended that "[a] party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses." *GTE*, 199 F.3d at 1351. To hold otherwise would be to hold that Congress intended no restrictions on personal jurisdiction in antitrust cases, a puzzling and inequitable interpretation.

In the present case, MasterCard claims that because it is not an inhabitant of Virginia, cannot be found in Virginia, and conducts no business in Virginia, MasterCard does not satisfy the venue clause of Section 12 and the Court thus DataCell cannot use Section 12's service-of-

7

process clause to exercise personal jurisdiction over MasterCard. DataCell claims that

MasterCard conducts business within the forum through contracts with the Virginia Department

of Taxation. The contracts, it claims, allow Comerica Bank customers to receive their tax

refunds on a MasterCard-brand debit cards. However, MasterCard provides a sworn declaration

(Doc. 46) and information from the Virginia Department of Taxation (Doc. 46-1; Doc. 46-2)

establishing that the tax-refund debit cards are the result of a licensing agreement between

MasterCard International, Inc.—a separate entity entirely from Defendant MasterCard

Incorporated—and Comerica Bank, along with several other contracts not involving MasterCard.

It is clear from MasterCard's evidence that MasterCard is a New York company that holds stock

and does little else. It is not found, nor does it conduct business in Virginia. Therefore, because

MasterCard does not satisfy the venue clause, this Court cannot use the service-of-process clause

to exercise jurisdiction over MasterCard and the Court grants MasterCard's Motion to Dismiss.

The Court rejects Visa's argument with regard to personal jurisdiction, however, because

it finds that DataCell has shown that service on Visa meets the venue clause and that Section

12's service-of-process clause does not conflict with due process. Visa does not argue that it

conducts no business in the forum.[1] It instead argues that Section 12's broad conveyance of

jurisdiction violates the due process requirements for personal jurisdiction set forth in *Daimler*

*AG v. Bauman.* 134 S. Ct. 746 (2014).

In *Daimler*, the plaintiffs sought to sue a German corporation, Daimler Chrysler

Aktiengesellschaft ("Daimler"), in the United States District Court for the Northern District of

California based on alleged human rights violations in Argentina. *Daimler AG v. Bauman*, 134 S.

Ct. at 750–51. The plaintiffs claimed that general jurisdiction over Daimler was proper based on

---

[1] DataCell avers in its Memorandum in Opposition that Visa operates a large data center in Ashburn, Virginia. (Doc. 37 at 8). Visa does not rebut this assertion.

the continuous and systematic California business dealings of its U.S. distributor, Mercedes-Benz USA ("MBUSA"). *Id.* The Supreme Court reasoned that even if MBUSA acted as Daimler's agent, because MBUSA was not incorporated in California and did not have its principal place of business in California, general jurisdiction was improper. *Id.* at 761–62. The Court held that the relevant general jurisdiction inquiry was not whether the defendant corporation's contacts with the forum were "continuous and systematic," but whether the contacts rendered it "essentially at home in the state." *Id.* at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Here, DataCell provides nothing in either its Complaint or its Memorandum in Opposition sufficient to support the notion that either defendant is at home in Virginia such that general jurisdiction would be proper. It acknowledges that neither company is incorporated, nor has its principal place of business in the forum. (Compl. ¶¶ 2, 4). However, pursuant to Section 12 of the Clayton Act, DataCell need not rely on general jurisdiction as limited by *Daimler*. While *Daimler* curtailed the applicability of general jurisdiction, it resolved nothing regarding a statutory grant of jurisdiction such as Section 12.

Although the effect of Section 12 is similar to a wide grant of general jurisdiction, the provision actually just specifies the way in which an antitrust plaintiff may serve a corporation in accordance with federal procedural rules. *See* Fed. R. Civ. P. 4(h) (supplying the caveat "[u]nless federal law provides otherwise" to the service rules for corporations, thus allowing Section 12 to remain valid). Reading Section 12 as an unconstitutionally broad conveyance of general jurisdiction goes against established rules of statutory construction, most notably the canon of constitutional avoidance. *See Norfolk S. Ry Co. v. City Of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010) ("[T]he principle of constitutional avoidance . . . requires the federal courts to strive to

9

avoid rendering constitutional rulings unless absolutely necessary."). Therefore, because Section

12 directly addresses service of process, and because jurisdiction upon service comports with due

process, Section 12 does not violate the established rules for personal jurisdiction. *Eastman*

*Kodak Co. v. Studiengesellschaft Kohle mbH*, 392 F. Supp. 1152, 1154 (D. Del. 1975) ("Service

of process on a corporation is the procedural incident of the assertion of a court's jurisdiction

over it.").

  In the present case, DataCell brings suit against Visa alleging violation of the Sherman

Antitrust Act. (Compl. ¶ 30). Section 12 applies to suits "proceeding under the antitrust laws" of

the United States. 15 U.S.C. § 22. Therefore, DataCell's suit is subject to Section 12 and to its

service-of-process clause. The service-of-process clause allows service on a corporate antitrust

defendant "wherever it may be found," which is tantamount to nationwide service of process.

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). As Visa

is an American company (Compl. ¶ 2), it more than meets the minimum contacts necessary to be

served within the United States. Therefore, Visa satisfies both clauses in Section 12, jurisdiction

is proper, and the Court rejects Visa's argument with respect to personal jurisdiction and denies

Visa's Motion to Dismiss.

### B. Standing

  The Court grants Defendants' Motions to Dismiss because DataCell cannot establish

injury or redressability necessary for Article III standing and it cannot establish antitrust injury

necessary for antitrust standing.

  While DataCell's Sherman Act and Virginia Antitrust Act claims need to meet the

additional burden of antitrust standing, all claims brought before the Court require Article III

standing. *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976) ("No principle

is more fundamental to the judiciary's proper role . . . in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). Article III standing has three elements: (1) injury in fact that is concrete and actual or imminent, (2) a causal connection between the injury and the act(s) complained of, and (3) a likelihood that the court can provide redress. *Lujan*, 504 U.S. at 560–61. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Id.* at 561.

Here, DataCell attempts to allege an injury in fact in two ways. First, DataCell alleges that Defendants "injured the media market by suppressing the market place [sic] of ideas." (Comp. ¶ 29). Second, it alleges that Defendants injured DataCell because DataCell was "entitled to five percent of [Sunshine Press] donations" and Defendants interfered with that arrangement. (Comp. ¶¶ 32–25). Neither injury is sufficiently concrete. DataCell's allegation that Defendants harmed the media market in that they suppressed "the market place of ideas"— assuming the Court could even define such a marketplace—is completely speculative. DataCell provides absolutely no facts supporting the assertion that the "media market" felt any impact from Defendants' actions. Likewise, the allegation that DataCell suffered a loss because it was entitled to five percent of Sunshine Press' donations is speculative and unsupported. DataCell provides no facts about the donations, only stating that it had an at-will contract with Teller (Doc. 1-1). Even if the Court were to assume that DataCell received money from Sunshine Press donations in the past, there was certainly no guarantee that DataCell would receive money in the future. Furthermore, assuming the Court were to accept DataCell's alleged injuries, the Court sees no likelihood that it could redress either one. It is unclear how the Court would go about restocking the "market place of ideas" or calculating theoretical donations to a controversial website. Therefore, DataCell does not establish Article III standing necessary to bring its claims.

Even if the Court were to find that DataCell had Article III standing, DataCell could not establish antitrust standing needed to bring its antitrust claims. The factors considered in evaluating antitrust standing are

> (1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws; (3) the directness of the alleged injury; (4) the existence of more direct victims of the alleged antitrust injury; and (5) problems of identifying damages and apportioning them among those directly and indirectly harmed.

*Kloth,* 444 F.3d at 324 (citations omitted). The first two factors make up antirust injury. *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 311 (4th Cir. 2007). Antitrust injury is injury to competition in the marketplace. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). The relevant marketplace has two parts: (1) the relevant product market and (2) the relevant geographic market. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441–42 (4th Cir. 2011). The last three factors of the antitrust standing analysis focus on the plaintiff's proximity to the harm alleged. *Novell*, 505 F.3d at 311.

In support of antitrust injury, DataCell alleges that Defendants' intentional actions "injured the media market by suppressing the market place of ideas." (Compl. ¶ 29). While the Complaint alleges that Defendants caused the harm, the harm alleged is patently inadequate. Here, DataCell makes the conclusory statement that Defendants "injured the media market." It does not provide any facts suggesting the media market felt any impact. More importantly, the Complaint fails to define a relevant market. It is unclear whether the injury alleged was to the "media market," or to the "market place of ideas." The more tangible of the two, the media market, is impossibly overbroad. DataCell makes no attempt to define the market geographically, or in terms of products. If the products in DataCell's market are ideas, then the antitrust laws cannot help DataCell. Congress created antitrust laws to protect free market

12

competition, not to protect the free exchange of ideas.  If the products in DataCell's market are classified State Department documents, then the antitrust laws are an even poorer fit.  In either case, DataCell cannot fit its grievances into the framework of Sherman Act.  Because DataCell fails to establish antitrust injury, the Court need not address the three remaining antitrust standing factors dealing with proximity.  Therefore, DataCell fails to establish standing and the Court grants Defendants' Motions to Dismiss.

### C. Plausibility of Claims Pleaded

The Court grants Defendants' Motions to Dismiss because DataCell's claims, completely bereft of factual support, do not suffice to establish a right to relief.  Under the Supreme Court's decision in *Twombly*, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### Count I, Violation of the Sherman Antitrust Act (15 U.S.C. § 1)

DataCell does not plead sufficient facts to state a claim under the Sherman Act because it does not plead facts that plausibly suggest an agreement or a restraint of trade.  In assessing a 12(b)(6) motion on a Sherman Act claim, the Court must "determine whether allegations covering all the elements that comprise the theory for relief have been stated as required." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 201–02 (4th Cir. 2002) (quoting *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220 (4th Cir. 1994)).  The elements of a Sherman Act claim are (1) "an agreement in the form of a contract, combination or conspiracy" and (2) "an unreasonable restraint on trade." *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 702 (4th Cir. 1991).

Defendants first argue that DataCell fails to plead sufficient facts to suggest the existence of an agreement. (Doc 22 at 20–22; Doc 26 at 13–15).  Defendants properly point out that under

13

*Twombly*, parallel conduct is not enough to show a concerted effort. *Twombly*, 550 U.S. at 556

("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). "A

statement of parallel conduct, even conduct consciously undertaken, needs some setting

suggesting the agreement necessary to make out a § 1 claim; without that further circumstance

pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in

neutral territory." *Id.* at 557.

DataCell makes three attempts to plausibly show the existence of an agreement. Notably,

DataCell added the second and third attempts in its Memorandum in Opposition; they were not

present in its Complaint. Defendants note that the Court need not address allegations not present

in the Complaint when evaluating a 12(b)(6) motion. *See Davis v. Cole*, 999 F. Supp. 809, 813

(E.D. Va. 1998) (citations omitted) ("The court may not consider additional allegations when

ruling on a motion to dismiss and must consider the facts asserted in the complaint, and the

attached exhibits, to be true."). Here, however, in the interest of finality, the Court will address

all three alleged agreements in turn.

DataCell's first allegation of a concerted effort is that "[t]he defendants successfully

conspired with each other." The claim is apparently based on a showing that staffers working for

Lieberman and King separately contacted each company and that the companies then both

contacted Teller to suspend the processing of payments to DataCell. (Compl. ¶¶ 13–22). This is

parallel conduct. Nothing in the Complaint suggests that Visa and MasterCard ever contacted

one another or that they would have any reason to do so. DataCell urges the Court to accept the

existence of a conspiracy between Defendants because their "actions were coordinated through

intermediaries: the Government Officials and their respective staffs." (Doc. 37 at 14). However,

if the companies' actions were coordinated through third parties, then their parallel conduct was

14

apparently the result of those third parties, and not of any contact the companies had with one another. Therefore, DataCell fails to plead sufficient facts to plausibly allege a Sherman Act conspiracy between Visa and MasterCard.

DataCell's second allegation of concerted effort is that Visa and MasterCard each separately conspired with the staffs of Lieberman and King. *Id.* The Complaint alleges that Lieberman and King indeed spurred the acts giving rise to the claim. (Compl. ¶ 15). However, the federal government is exempt from antitrust litigation. *See Rex Sys., Inc. v. Holiday*, 814 F.2d 994, 996–97 (4th Cir. 1987) (holding that the United States cannot constitute a "person" under the Sherman Act). Further, under the *Noerr-Pennington* doctrine, communications between private entities and the government are not subject to antitrust laws. *See Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 398 (4th Cir. 2001) ("Antitrust law was thus not intended to impose a barrier between the people and their government."). Thus, DataCell fails to plausibly state a Sherman claim between Defendants and government officials.

DataCell's third allegation of a concerted effort is that each company separately engaged in vertical conspiracies with the downstream companies Teller and Valitor. (Doc. 37 at 15). Here, DataCell does set forth facts to plausibly suggest that the parties had an agreement with one another. It alleges that Defendants ordered Teller and Valitor to act and that Teller and Valitor complied. The Court must therefore look to the second element of conspiracy, unreasonable restraint on trade.

While DataCell alleges that the concerted efforts of Defendants and downstream companies impacted the market, it does not supply any facts to support that conclusion. DataCell claims that Defendants harmed the market by "suppressing the market place of ideas," but does nothing to show that its loss of five percent of credit card donations to Sunshine Press

had any impact on media market competition.  Under *Twombly*, unsupported conclusory statements do not satisfy the Rule 8(a) pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  DataCell simply declares that "[t]he defendants did not have a legitimate economic reason to prevent credit card payments to DataCell."  However, its own Complaint seems to give an obvious economic reason why Defendants would disassociate from DataCell, public opinion.  The Complaint explains that King, a high-ranking government official, publicly decried Sunshine Press—DataCell's partner—and attempted to label it a "terrorist organization." (Compl. ¶ 14).  Not wanting their companies associated with terrorism seems a far more likely explanation for Defendants' conduct than a conspiracy to restrain trade. *See Twombly*, 550 U.S. 544, 567–68 (2007) (dismissing the complaint because defendants' activities were more likely explained by lawful behavior).  Notably, DataCell fails to proffer any reason Defendants could possibly have for conspiring to restrain trade in the media market, a market with which Defendants have no obvious stake.  Thus, DataCell fails to plead sufficient facts to plausibly establish an unreasonable restraint on trade and the Court grants Defendants' Motions to Dismiss with respect to Count I.

**Count II, Tortious Interference with Business Expectancies and Contract**

DataCell does not plead facts sufficient to state a tortious interference claim because it does not plead facts plausibly establishing a valid business expectancy or wrongful interference. A tortious interference claim involving an at-will agreement requires a *prima facie* showing of (1) a valid contract or business expectancy with a probability of subsequent economic profit, (2) the defendant's knowledge of that contract or expectancy, (3) improper interference that results in the breach of the contract or expectancy, and (4) damage to the party bringing the claim. *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 830 (E.D. Va. 2011).

Here, DataCell provides no facts that suggest its at-will agreement with Teller would have continued but for Defendants' involvement, or that DataCell's continued relationship with Teller would have likely lead to subsequent economic profit. The Complaint does not even allege that DataCell earned economic profit from its agreement with Teller *before* Defendants' conduct. It simply states that "DataCell was entitled to five percent of [Sunshine Press] donations." DataCell pleads no facts suggesting that Sunshine Press was receiving donations at the time of Defendants' involvement, and it plead no facts suggesting that Sunshine Press was paying five percent of those donations to DataCell. Even if the Court were to take the many inferential leaps needed to reach the conclusion that DataCell plausibly had a business expectancy and that it was harmed from Defendants' actions, DataCell still does not plead facts to suggest that the alleged interference was "improper."

In an at-will contract, the interference must be improper. *Duggin v. Adams*, 360 S.E.2d 832, 836 (1987) (citing *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)). Improper methods can include illegal methods of interference, independently tortious methods of interference, methods in violation of established standards of trade, sharp dealing, overreaching, unfair competition, or other competitive conduct. *Id.* at 836–37.

Here, DataCell's Complaint does not allege that Defendants interfered with its contract for any competitive reasons. It alleges that Defendants did so at the behest of Lieberman and King. DataCell's statement that Defendants instructed Teller and Valitor to stop processing "without any legitimate reason to do so" is conclusory and does not suffice to state a plausible claim for relief, especially in light of the fact that DataCell alleges that Defendants' reason for ordering Teller and Valitor to stop processing was to comply with the requests of members of Congress. Because DataCell fails to plead any facts suggesting either a valid business

17

expectancy or improper interference, the Court grants Defendants' Motions to Dismiss with respect to Count II.

## Count III, Violation of the Virginia Antitrust Act (Va. Code § 59.1-9.12(b))

The Virginia Antitrust Act mirrors the Sherman Antitrust Act. *Satellite Television & Associated Res., Inc. v. Cont'l Cablevision of Virginia, Inc.*, 714 F.2d 351, 353 (4th Cir. 1983). The parties do not dispute this fact. (Doc. 37 at 22). Therefore, the Court must reject Count III for the reasons cited in its discussion of Count I. The Court grants Defendants' Motions to Dismiss with respect to Count III.

## Count IV, Civil Conspiracy

A civil conspiracy requires two or more parties working in concert either to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 268 (4th Cir. 1959). Because DataCell fails to plead sufficient facts to plausibly state claims for violation of antitrust laws or for tortious interference, it fails to state an unlawful purpose or unlawful means. Therefore, DataCell fails to state a claim for civil conspiracy and the Court grants Defendants' Motions to Dismiss with respect to Count IV.

## *D. Dismissal Without Leave to Amend*

The Court dismisses DataCell's Complaint without leave to amend because it finds that any attempt on DataCell's part to amend the Complaint would be futile, and because granting DataCell leave to amend would be prejudicial. "The court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a). However, whether to grant or deny a motion to amend "is within the sound discretion of the district court." *Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union*, 254 F.R.D. 274, 277 (E.D. Va. 2008). Leave to amend the complaint should be denied if "prejudicial to the opposing party, there has been bad

18

faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

Here, DataCell cannot cure its Complaint with an amendment.  Even if DataCell could cobble together facts sufficient to plausibly state a claim for conspiracy in restraint of trade under the Sherman Act—a prospect that, based on the pleadings, seems exceedingly remote—it cannot establish standing to bring its suit.  DataCell suffered no injury in fact because it had no claim to theoretical future donations to Sunshine Press.  If any entity had standing, it might have been Sunshine Press, not the company that provided Sunshine Press' "server hosting and technical support." (Compl. ¶ 7).  Furthermore, a restraint on "ideas" in the amorphous "media market" is not a restraint on trade under Section 1 of the Sherman Act.  Finally, forcing Defendants to shoulder the enormous expense of antitrust litigation is not warranted.  Because no amendment to the Complaint can cure DataCell's lack of standing, and because granting DataCell leave to amend its Complaint would prejudice Defendants, the Court dismisses DataCell's Complaint without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motions to Dismiss on all counts.  The Court finds that it cannot exercise personal jurisdiction over MasterCard because MasterCard is a holding company and has no contacts with Virginia.  More importantly, DataCell fails to establish standing and fails to state a plausible claim for relief.  As any attempts to amend DataCell's deficient Complaint would be futile and prejudicial, the Court must dismiss the Complaint with prejudice.  Accordingly, it is hereby

**ORDERED** that Defendant Visa Inc.'s Motion to Dismiss (Doc. 21) is **GRANTED** in its entirety, and it is further

**ORDERED** that Defendant MasterCard Incorporated's Motion to Dismiss the Complaint (Doc. 25) is **GRANTED** in its entirety, and it is further

**ORDERED** that Plaintiff DataCell ehf.'s Complaint is **DISMISSED WITHOUT LEAVE TO AMEND.**

**IT IS SO ORDERED.**

ENTERED this 20ᵗʰ day of July, 2015.

Alexandria, Virginia

7/20/2015

/s/
Gerald Bruce Lee
United States District Judge

20